## Himler Coal Company v. Kirk, et al.

(Decided November 21, 1924.)

### Appeal from Martin Circuit Court.

1. Mines and Minerals—Warranty Deed Reserving Minerals Impliedly Reserved Right to Use Surface for Removal and Transportation of Minerals.—Grantor who conveyed surface by warranty deed, but reserved to itself the coal and minerals beneath the land, impliedly reserved the right to use the surface as far as necessary for removal and transportation to the market of the minerals so reserved.

2. Deeds—Grant Carries with it Everything Necessary to Enjoyment of Thing Expressly Granted.—One who grants a thing grants with it everything necessary to its enjoyment.

3. Easements—Necessary for Enjoyment of Land, are Created ex Necessitate on Grant of Land.—Where land is granted, easements necessary for its enjoyment are created ex necessitate and pass by the grant, though not expressly named.

4. Deeds—Grantor Cannot Derogate from Own Grant, while Grantee may Take Language of his Deed Most Strongly in his Favor.— A grantor cannot derogate from his own grant, while grantee may take the language of his deed most strongly in his favor.

5. Easements—Implied in Favor of Grantee More than in Favor of Grantor.—The law will imply an easement in favor of grantee more readily than it will in favor of a grantor.

6. Mines and Minerals—Evidence Held to Prove that Railroad Constructed by Grantor for Transportation of Reserved Minerals was Not Way of Strict Necessity.—Evidence held to prove that railroad constructed by grantor in particular location for transportation of minerals reserved by grantor was merely a way of convenience and not a way of strict necessity, such as was impliedly reserved.

W. R. McCOY for appellant.

J. B. CLARK for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant sought to enjoin the appellees from interfering with or preventing its construction or operation of a railroad across the land of appellees. The lower court denied the relief sought.

Prior to the 14th of July, 1881, the Tug River Coal & Salt Company was the owner of a 15,000-acre tract of land, which fronted on Tug river from the mouth of Little Elk creek to the mouth of Wolf creek and extended back on to the waters of Rockcastle creek and included all the lands on Collins' creek and Buck creek, and on July 14, 1881, it made, executed and delivered to James A. Barret a deed for a portion of the surface of said tract, which included the lands on Collins' creek and Buck creek, and which includes lands claimed by the appellees. This deed called for 200 acres, more or less, but when boundary was run out, according to the description of the deed, it was found to contain 609 acres, and included the lands from the mouth of Collins' creek to below the town of Warfield, which is situated at the mouth of Buck creek, with certain exceptions that do not affect this controversy. The grantee, James A. Barret, continued to own this surface to the time of his death.

He died intestate and was survived by his widow, Helen
L. Barret, and two sons, J. D. Barret and A. Lee Barret,
to whom this land descended; they divided this land and
executed to each other deeds, and by the division made
by the heirs, A. Lee Barret became the owner of cer-
tain surface, a portion of which the appellee, Ella Kirk,
now owns. From the Tug River Coal & Salt Company
the holdings of that company have passed by mesne con-
veyances to the Buck Creek Coal Company, and it has
leased same to the appellant. The Himler Coal Com-
pany, under and by virtue of said lease, put in its mines
on Buck creek, a short distance above the lands of the
appellees, and on the J. A. Barret tract, for the purpose
of mining coal from under the Kirk property, as well as
other properties that it had acquired by virtue of said
lease, but all being a part of the tract formerly owned
by the Tug River Coal & Salt Company. The point
where the mines were put in is about two miles from the
Norfolk & Western railroad, and on the opposite side of
Tug river from the railroad. It was necessary to
construct a railroad from its mines to a railroad bridge
which was constructed across Tug river, and in order to
reach its mines from the bridge it was necessary, as ap-
pellant claims, for it to pass over one edge of the Kirk
property with its right of way, and to take about three-
tenths of an acre of the land for the right of way.

Appellant was incorporated by the state of West
Virginia, and was given the right, among other things, to
engage in mining coal and building railroads. After ap-
pellant had located its railroad from the bridge to its
mine, it was found it passed over the edge of the Kirk
tract, and when it attempted to grade and construct its
road, it was forbidden by Kirk to enter said land for
that purpose, and then it was that appellant filed this
action in equity against them in the Martin circuit court
to enjoin and restrain them from interfering with it in
the grading, construction and operation of said road,
and it entered its motion, after notice. A temporary in-
junction was granted and appellant executed a bond
and constructed its road over the property. The case
was then prepared and tried upon its merits, and re-
sulted in a judgment dismissing the appellant's petition.

The question involved in this case is this: Has the
Himler Coal Company, by necessity, a right of way over
the Kirk property for the construction of its railroad, in
order to remove the coal now being mined from beneath

the Barret homestead, of which the Kirk property is a part? The Himler Coal Company is also claiming the right to transport across the Kirk land not only the coal which it is now mining from beneath the Barret homestead, but the further right to transport this coal which it owns outside of the Barret homestead. The question of the transportation of this other coal across the Kirk property is not now before us, and anything we might say about that would be merely dictum, and in this opinion we shall confine ourselves to the right of the Himler Coal Company to transport across the Kirk property the coal beneath the Barret homestead.

When the Tug River Coal & Salt Company conveyed this surface to Barret, it retained the minerals thereunder, and its right to transport those minerals across the Kirk property depends upon whether or not the Himler Coal Company, as the mesne grantee of the Tug River Coal & Salt Company, has a right to open a coal mine on the homestead to mine the coal thereunder, and to transport it thereover to market. Its reservation of the minerals in the conveyance to Barret necessarily reserved to it and its grantees the right to dig through the surface to the minerals, to mine them in such way and in such quantities as not to destroy the support of the surface, to bring these minerals to the surface, and to transport them over the surface from the opening to the market. Such rights are absolutely necessary to the reasonable enjoyment of the minerals reserved. It was, therefore, impliedly reserved in the deed to Barret. Upon the principle of construction that, where a man grants a thing, he grants with it everything necessary to its enjoyment, it is held that by a grant of land, easements necessary for its enjoyment are created, *ex necessitate,* and pass by the grant, although not expressly named. Bentley v. Hampton, 28 R. 1083, 91 S. W. 266; Roland v. O'Neal, 122 S. W. 827; L. & N. R. R. Co. v. Ward, 150 Ky. 42, 149 S. W. 1145; Skaggs v. Carr, 178 Ky. 849, 200 S. W. 27; Brookshire v. Harp, 186 Ky. 217, 216 S. W. 379.

The effect of the conveyance by the Tug River Coal & Salt Company to Barret of the surface only, was the same as if Barret had been the owner of the entire estate and had conveyed to the Tug River Coal & Salt Company the coal beneath his land, and if he had done that, he could not now be heard to say: "It is true that I conveyed this coal to the Tug River Coal & Salt Company, but I didn't grant to it any right to remove it."

In other words, he cannot say: " Yes, I sold it to them, but I am not going to let them have it."

It appears that when the Tug River Coal & Salt Company made its deed to Barret, it reserved to itself not only the coal and minerals beneath the land conveyed to Barret, but also reserved impliedly the right to use the surface of the Barret property, as far as necessary, for the removal and transportation of the minerals which it reserved to market.

This surface was conveyed to Barret by deed of general warranty, and it is insisted that this general warranty would be inconsistent with an implied reservation of the right to sink a shaft to mine the coal, and the right to construct a railroad to transport the coal when mined. That question is fully answered in the case of Adams v. Marshall, 138 Mass. 228, 52 Am. Rep. 271, where the court said:

"The law upon ways of necessity has been frequently considered by this court, and it is established that such ways exist only so long as the necessity exists; that the reservation of such a way to the grantor is to be implied, when necessary, as well as the grant of such a way to the grantee; and that this implied reservation of a way to the grantor over the land granted is not a breach of the covenants of warranty against incumbrances contained in the deed."

A similar answer is given to this same question in the case of N. Y. & N. E. R. Co. v. Board of R. R. Commissioners, 162 Mass. 81: "The law presumes that one will not sell land to another without an understanding that the grantee shall have a legal right of access to it, if it is in the power of the grantor to give it, and it equally presumes an understanding of the parties that one selling a portion of his land shall have a legal right of access to the remainder over the part sold if he can reach it in no other way. This presumption prevails over the ordinary covenants of a warranty deed."

These authorities fully settle that question, if indeed, it really is a question; but suppose, for example, that in making the deed to Barret, the Tug River Coal & Salt Company had written into the deed this: "A right is hereby reserved to sink a shaft for the purpose of mining and removing this coal and to construct a railroad across this surface for the transportation of the

coal to market when it is mined,'' and had then given a general warranty. Could Barret or those claiming under him say that the exercise of this right was inconsistent with that warranty? Yet, writing that into the deed in words would be no more than the law writes into this deed by implication.

"A reservation, in terms, 'of a way of necessity,' would confer no further right than would be conferred by operation of law, without those words." O'Daniel, etc. v. Baxter, etc., 112 Ky. 334, 65 S. W. 805.

However, it should be noted that there is a difference between the implied grant of a way of necessity and the implied reservation of a way of necessity. This distinction is well founded in principle and well supported by authority. See Howley v. Chaffee, 88 Vt. 468, 93A 120, L. R. A. 1915D 1010.

As a grantor cannot derogate from his own grant, while a grantee may take the language of his deed most strongly in his favor, hence the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor. Wells v. Garbutt, 132 N. Y. 430, 30 N. E. 978.

In the case of McGurn v. L. & N. R. Co., 177 Ky. 835, 198 S. W. 222, the rule in Kentucky is stated thus:

"In view of the rule that a grant is taken most strongly against the grantor and if he intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant, the authorities recognize a distinction between an implied grant and an implied reservation, and hold that where there is a grant of land with full covenants of warranty, and without express reservation of easement, there can be no reservation by implication, unless the easement is strictly necessary, the term 'necessary' meaning there can be no other reasonable mode of enjoying the dominant tenement without the easement."

The Himler Coal Company's railroad has been located and constructed and in its construction it has torn down a barn belonging to the appellees and has destroyed their shade trees and fencing. This road, as they have built it, is within 41 feet of their dwelling.

The appellees estimate the damage done to them at $6,500.00.

The engineers do not say that this road could not have been constructed elsewhere and over appellant's own property, but they say that this was the most practical location, considering cost of construction, grades, curves, etc.

The following is taken from the testimony of N. B. Gurley, the engineer who located this road, and who was a witness for the appellant:

"Q. 27. In your judgment, to connect the road with the bridge and mine could it have been constructed by the Kirk property in any other way than you did construct it without excavating, grades and cuts? A. Not without going to great expense.

"Q. 9. Your best judgment is that the way you located it was the most practical way to locate that road, is it? A. Subject to the testings and expenses—

"Q 10. In other words, you located the road so it would be constructed with the least possible expense? A. It was our intention to locate the road so as to intersect and balance and that would be the most economical."

Another of appellant's engineers said:

"Q. 9. Then the reason you say that is the most practical way is that it can be built that way with less money than to go the other way? A. Yes, sir, I do."

This is from the secretary and treasurer of appellant:

"Q. 27. About what sum has the company expended in the way of development, or has it under contract to spend, in developing the leasehold? A. About $1,000,000.00.

"Q. 28. After you had acquired this lease, what did you do to determine the location of a railroad from the end of the Kermit-Warfield Bridge Company's bridge to the mines on Buck creek? A. We gave instructions to our engineer to locate the most practical route that could be located for a railroad, and after our surveyor had surveyed the road, we had two other engineers, not employed by us, to go

over and check and see if the proposed road was the most convenient, economical and profitable way to build the road.

"Q. 44. Did you propose that you would reconstruct the barn and crib on any other portion of the land? A. No, I did not propose that.

"Q. 29. Isn't it a fact that your petition asked for a strip 80 feet wide? A. It might have.

"Q. 32. About 40 feet was all that was necessary, wasn't it? A. It was my understanding that about 40 feet of defendant's property was all that was necessary—it might have been more; I don't know."

There can be but one conclusion. This is a way of convenience and not a way of necessity, certainly it is not a way of strict necessity, and that is the only implied easement that is reserved to a grantor. McGurn v. L. & N. R. R. Co., 177 Ky. 835, 198 S. W. 222.

However, the appellant has built its road; its location upon the land of appellees is a *fait accompli.*

We feel that appellant did wrong in locating this road as and where it did, but that is done and cannot be undone. The buildings and fences might be restored and the cut might be filled, but it would be impossible to restore the fruit and shade trees, and to require it to attempt to do so would be a great wrong upon it and would not right the wrong done appellees. Therefore, it is ordered that the judgment be reversed and this cause remanded with directions to reinstate and to make permanent the temporary injunction; but nothing herein is to prejudice the rights of the appellees to sue on the bond in this case for any damages they may have sustained if in constructing this railroad, as and where it did, the appellant has taken any of their property for which there was not a strict necessity,