[Civ. No. 20033.   Second Dist., Div. Two.   June 11, 1954.]

GRACE HASKINS CONKLIN, Appellant, v. E. MARVIN GOODSON et al., Respondents.

Hugh Ward Lutz for Appellant.

Howard W. Hunter and James V. Brewer for Respondents.

MOORE, P. J.—Plaintiff appeals from a judgment denying her relief in an action for damages to real property.

Her home is on Lots 10, 11 and 12 of Tract 798 in the Hollywood Hills. Directly to the east of and adjacent to appellant's land are Lots 45 and 46 which are contiguous with each other. To the east of Lots 45 and 46 is Lot P, about 30 feet in width and 534.38 feet long. As it approaches Lot 46, Lot P makes a turn southward, bounds Lots 45 and 46 on their easterly sides and at about 190 feet from a point opposite the southerly boundary line of Lot 11, it connects with Lot O which is also about 30 feet wide and lies generally in a westerly direction. Lots 45 and 46 are uphill from

Lots 10, 11 and 12 and are immediately below a ridge at or about where Lot P adjoins Lot 46.

Appellant alleged that Lots 45 and 46 are not normally subject to the flow of water coursing down any slope or gully other than the natural rainfall on the slope of said ridge immediately above them; that prior to October, 1947, Lots O, P, Q and M were maintained as a narrow dirt trail through the hills; that defendants, owners of adjacent lands, then widened, graded and surfaced with asphaltum black top, Lots O, P, Q and M in a negligent and wrongful manner and have continuously excavated the soil from said lots and deposited the same on the downhill slopes thereof, thereby widening the drainage-collecting area of said lots and blocking the normal course of water flowing down the slopes and gullies northerly and above the said Lots 45 and 46 and have so negligently constructed and maintained the road on said lots that the natural rainfall coming down the slopes and gullies above Lots 45 and 46 were and are collected upon the surface of said Lots M, Q and O and caused to course down the length thereof towards the point of the ridge directly above the property of plaintiff where Lot P adjoins Lots 45 and 46.

In paragraph V she alleges that "about January 17, 1952, during the course of a normal rainfall, rain waters were negligently and wrongfully collected as aforesaid on said Lot 'P' and debouched over the side or bank, where Lot 'P' adjoins Lots 45 and 46, down and across said last-mentioned lots and upon the property of plaintiff flooding her property and her home and garage with water, mud, silt and debris to plaintiff's damage as follows: Undermining and destroying two retaining walls upon the slopes to the rear of plaintiff's home, the landscaping of said hillside, flooding against the dwelling with mud and debris, breaking two screens and a window, filling a sleeping room with mud and debris, destroying the hardwood floor, the plaster and paint on the walls thereof, two heating radiators and the furniture and furnishings in said room and filling the entrance way to the garage and the dwelling with mud and debris."

In paragraph VI she makes similar allegations with reference to the floodwaters that came down upon her home about March 15, 1952, and that they flooded her home and garage with water, mud, silt and debris which accumulated against her home and garage and damaged her home and garage and movables within them, and such waters were collected on Lot P, by reason of defendants' negligence.

She alleges that by reason of defendants' construction and maintenance of Lots O, P, Q and M of Tract 798, further damage will occur to plaintiff's property as normal rains are received above her property and wrongfully debouched upon her home. She makes appropriate allegations and demands compensation for the damage to her home in the sum of $2,450 and for exemplary damages.

In response to the issues created by respondents' denials of the amended complaint, the court made findings whereby respondents were exonerated from all charges of negligent or wrongful acts with relation to appellant's property or to the accumulation of storm waters that flooded her home and damaged her property. It was found that appellant was present at the surfacing and grading of the road on Lots P and O and acquiesced in its maintenance after surfacing for a period of several years through a series of rainstorms of intensity equal to those described in her complaint, without complaining, and that her injuries suffered were solely and proximately contributed to by appellant's own negligence in failing to take precautions to protect her property.

The evidence is ample support for the findings. The proof is that Lot P was purchased at tax sale by respondent Van Wert in March, 1949. It had been known as Yucca Trail and used as a street, but Mr. Van Wert had not participated in its grading improvement. He had not even seen it prior to 1952. The proof adopted is that the trail had been in constant use as a street for 20 years by the owners of adjacent properties as the only way of ingress and egress. Therefore, at the time of the sale of Lot P to Van Wert, the public had acquired title thereto by open, notorious and adverse user for over five years. (*Wallace* v. *Whitmore,* 47 Cal.App.2d 369, 372 [117 P.2d 926].) Purchase of the trail brought the title of the land to Van Wert subject to the easement for street purposes of abutting owners. (Rev. & Tax. Code, § 3520.) This placed upon the new owner no obligation to keep the surface of the trail in proper repair. That burden was incumbent upon the owners of the easement. (*Crease* v. *Jarrell,* 65 Cal.App. 554, 559 [224 P. 762].)

The evidence fails to establish that either respondent negligently paved the trail or did any act to cause the floodwaters to flow upon appellant's home and movable property. The evidence was that appellant's homesite is an excavated area cut into the side of the hill below the adjacent areas. Exhibits received show the drainage curve was filled with debris

on January 18, filling the trail there almost level with the edge of the berm. In such situation, what power could have stayed the onward rush of waters upon her or have suspended the downward course of the flood? To divert the flow of such storm waters would have paralleled King Canute's struggle with the sea, on the dates in question. The official Los Angeles ''climatological data'' shows that January 17, 1952, witnessed the completion of a three days' precipitation of more than 6 inches. In an area of steep and rocky hills and gullies, that amount of water is a monstrous force. The destructive power of sudden storm waters is incalculable. If the paved portion of Yucca Trail was only 11 feet wide, deeply rutted after rains and tilted from 6 to 12 inches, as testified by Mr. Goodson, it was inevitable that such storm waters should fill the normal drainage curve with debris and the following waters laden with silt leap the berm and invade the lower hillside home. After an ordinary rain, the waters never went over the edge of the trail. The community had employed experienced road contractors to pave the trail with a 3-inch layer of rock and oil, slightly increasing the pitch to keep drainage next to the hill. The road was not changed at the point where the water spilled over onto appellant's home.

Nor had there been any change in the area drained by Yucca Trail. According to Professor Mackintosh who testified that the trail ''forms now a channel for water which had collected from and along those hills so that it performs both the functions of a channel for water and a one-car roadway,'' the excess water that flowed over to appellant was caused (1) by its content of surface material which was deposited on the low spots on the inside of the curve of the trail above appellant's home and (2) by a caved-in bank that dammed the flow. Moreover, he testified also that the drainage on the trail was improved by its pavement; that it had not washed over in recent years; that the rear of appellant's premises had from 12 to 36 inches of loose dirt over the decomposed granite which would be washed into her house during rains because of conditions at her place; the harder surface of the asphalt would prevent the washing down of the road, take the water away more quickly and carry off a larger amount of water without running over the outer edge.

From such testimony and that of other witnesses and from the court's inspection of the premises and surrounding area,

it was demonstrated to the satisfaction of the trial court (*Summers* v. *Parker*, 119 Cal.App.2d 214, 218 [259 P.2d 59]) that in no respect were respondents negligent; that their efforts tended to increase the protection to appellant; that the flooding of appellant's home was always imminent; that the storms on January 17 and March 15, 1952, were of unusual violence and the damage to appellant was unavoidable.

Judgment affirmed.

McComb, J., and Fox, J., concurred.