**BLUE DIAMOND COAL COMPANY,**
Appellant,

v.

**Wireman NEACE et al., Appellees.**

Court of Appeals of Kentucky.

May 20, 1960.

Rehearing Denied Sept. 16, 1960.

J. W. Craft, Jr., Bruce Stephens, Jr., Hazard, for appellant.

D. G. Boleyn, Hazard, for appellee.

PALMORE, Judge.

Blue Diamond Coal Company appeals from a judgment entered on a jury verdict

awarding appellees, Wireman Neace and wife, $2,000 on their counterclaim against it for damages to their real property caused by the company's coal mining operations. It is contended that the trial court erred in overruling appellant's motion for a directed verdict and for judgment notwithstanding the verdict.

■ Appellees own the surface of 50 acres of land at or near the head of the hollow on Rock House Branch of Sixteen Mile Creek in Perry County. Their title is subject to the rights of the company as the owner of the coal and other minerals in, under and adjacent to their property through a deed from Z. H. Fugate et ux. to the Tennis Coal Company executed August 31, 1903, the terms of which are virtually identical with those quoted from the deed involved in Buchanan v. Watson, Ky. 1956, 290 S.W.2d 40, and describe the rights conveyed as follows:

"The following property, rights and privileges, in, of, to, on, under, concerning and appurtenant to the hereinafter described tract of land, which said property, rights and privileges are as follows, to-wit:

"All the coal, minerals and mineral products, * * * such of the standing timber as may be, or by the Grantee, its successors, or assigns be deemed necessary for mining purposes, * * * together with the right to enter upon said lands, use and operate the same and surface thereof, * * * in any and every manner that may be deemed necessary or convenient for mining, * * * and in the use of said land and surface thereof, by the Grantee, its successors or assigns, Grantee, its successors and assigns, shall be free from, and is, and are hereby released from liability or claim of damages to the said Grantor, their heirs, representatives or assigns. * * * and there is reserved to the Grantor all the timber upon said land, except that necessary for mining, and the purposes

hereinbefore mentioned, and the free use of land for agricultural purposes, so far as such use is consistent with this property, rights and privileges hereby bargained, sold, granted or conveyed, and the right to mine and use coal for Grantor's own personal household and domestic purposes."

Some years before the inception of this litigation the company had removed, by the conventional method of deep mining, all of the "mineable" coal in a seam located in the hill above the appellees' home, leaving a fringe of coal in place between the face where the operation left off or was "pulled back" and the line in the side of the hill where the seam of coal crops out to the surface soil. According to the company, the coal left in this fringe area was not mineable by the process of deep mining because the cost would be prohibitive. However, the newer process of auger mining makes it possible to remove the remnant economically by boring it out from the side of the hill. In order to accomplish this process it is necessary first to excavate along the side of the hill so as to remove the overburden of soil and "bloom" (the low grade unmerchantable coal at the edge of the seam) and lay open a face into which the augers may be drilled. This preparatory operation partakes of the nature of strip mining, and it is necessary that in clearing away the overburden a rather broad, flat surface be left along the side of the hill for the location and operation of the mining equipment and for the loading and passage of trucks. This purpose is effected by simply shoving the soil and debris over and down the side of the hill.

The major item of loss to the appellees apparently lay in the timber destroyed in making the cut against the slope of the hill. In addition, some 25 acres of their land, including the garden, were invaded and certain improvements damaged by the stumps, rocks, coal and debris cast down the hillside.

The first question on this appeal is whether Buchanan v. Watson applies. It

clearly does. See also Bevander Coal Co. v. Matney, Ky.1959, 320 S.W.2d 301. Therefore, the company was entitled to a directed verdict unless its rights were exercised in an arbitrary, wanton, or malicious manner. Buchanan v. Watson, supra; Tolliver v. Pittsburgh-Consolidation Coal Co., Ky.1956, 290 S.W.2d 471.

The case was tried on the theory of an excessive and illegal exercise of the company's rights. The instruction in this respect offered by appellees and given by the court was as follows:

"The Court instructs the jury that the plaintiff, Blue Diamond Coal Company, had the right to the use of the surface in the prosecution of its business of mining for any purpose of necessity or convenience, unless this power was exercised oppressively, arbitrarily, wantonly or maliciously, and if you believe from the evidence in this case that the plaintiff in the prosecution of its business of mining, exercised this right and power in an oppressive, arbitrary, wanton or malicious manner, and the defendants' property was injured and damaged thereby, then the law is for the defendants, and you should so find. Unless you so believe, the law is for the plaintiff and you should so find."

 Several of the witnesses who testified for appellees had engaged in coal mining and were of the opinion that the coal the company is mining by the auger method could have been recovered by the deep mining method. However, as held in Buchanan v. Watson, supra, the company had the right to adopt the strip and auger method, and none of them advanced any theory as to how that method might feasibly have been employed differently or in a more careful manner than the way in which it was actually conducted, nor was there any showing that the procedures employed were not usual and customary in that type of operation. The mere exercise of a right to mine in a particular fashion cannot of itself be classified as arbitrary, wanton, or malicious. It is the manner of the mining operation, as distinguished from the fact of its being carried on, that determines liability for damages. Elkhorn Coal Corp. v. Johnson, Ky.1953, 263 S.W.2d 124. It follows, then, that appellant's motion for a peremptory was well taken and that the trial court erred in overruling both it and the subsequent motion for judgment n. o. v. See CR 50.02 and Dick Auto Parts & Salvage v. Higgason, Ky.1959, 322 S.W.2d 92.

 The conclusion thus reached in this case is unavoidable unless, as is seriously urged both by the trial court and by the appellees, Buchanan v. Watson be overruled. It is pointed out that for many years prior to the rendition of that decision in 1956 it was a settled law of property that in the absence of a waiver the right of the surface owner to subjacent support was absolute and the mineral owner had no right to destroy or injure the superincumbent soil. Cf. H. B. Jones Coal Co. v. Mays, 1928, 225 Ky. 365, 8 S.W.2d 626; West Kentucky Coal Co. v. Dilback, 1927, 219 Ky. 783, 294 S.W. 478. Appellees having bought their land in 1945, they contend that Buchanan v. Watson will operate as an unconstitutional divestiture of their rights. However, it has always been the law that the grant or reservation of minerals carries with it the right to use the surface for the purpose of removing the minerals. Himler Coal Co. v. Kirk, 1924, 205 Ky. 666, 266 S.W. 355; Horseshoe Coal Co. v. Fields, 1925, 207 Ky. 172, 268 S.W. 1078; Buck Creek R. Coal Co. v. Haws, 1934, 253 Ky. 203, 69 S.W.2d 333. Whether strip or auger mining is embraced within an implied right to use the surface has not been decided by this court. But in cases where the mineral deed expressly confers upon a grantee the right to use the surface in "any manner that may be deemed necessary and convenient," as it does in this case, it was uniformly held long before 1945 that the mineral owner is not confined in its use of the surface to "that which in the opinion of a jury would be absolute-

ly necessary" but, on the contrary, is liable only in the event of an arbitrary, wanton or malicious exercise of that right. Wells v. North East Coal Co., 1934, 255 Ky. 63, 72 S.W.2d 745, and cases therein cited. Therefore, without disparaging the viewpoint expressed in behalf of the appellees, we are obliged to point out that Buchanan v. Watson did not upset any existing law, but applied the old principles to a new fact situation and, right or wrong, it would be a grave matter indeed for this court by overruling it now to upset property rights which have since vested in reliance upon it. Short of that which is proved to be arbitrary, wanton, or malicious, the control of commercial mining practices is strictly a matter of legislative regulation. See Ch. 350, KRS.

The motion for appeal is sustained and the cause reversed with directions to enter a judgment in favor of the appellant.