[Civ. No. 22519.   First Dist., Div. One.   Feb. 24, 1966.]

THOMAS K. McMANUS et al., Plaintiffs and Respondents, v. SEQUOYAH LAND ASSOCIATES, Defendant and Appellant.

Sturgis, Den-Dulk, Douglass & Anderson and Robert T. Anderson for Defendant and Appellant.

John Felton Turner for Plaintiffs and Respondents.

MOLINARI, J.—Plaintiffs brought this action to recover from defendant, Sequoyah Land Associates, a corporation, one-half of the costs of improving an easement which runs across plaintiffs' property and which, at the time the improvements were made, was owned by defendant, and to enjoin defendant from trespassing on plaintiffs' property. After trial without a jury, the court entered judgment for $21,374.82 in favor of plaintiffs, this amount constituting one-half of the amount the court found to be the fair and reasonable cost of

improving the subject easement, but denied plaintiffs the injunctive relief they sought. From that portion of the judgment in favor of plaintiffs defendant appeals,[1] urging in particular that there was in fact no easement in existence when plaintiffs constructed the roadway on their property; that, if there was in fact an easement in existence at that time, plaintiffs as the owners of the servient tenement had no right to improve it at the expense of defendant without defendant's consent; and that requiring defendant to pay one-half of the cost of the improvements would constitute an unjust enrichment to plaintiffs.

## *The Record*

Prior to March 16, 1959 one Sarah Mendonca owned two adjoining parcels of land of approximately 17 acres and 10 acres (hereafter referred to as parcels A and B, respectively) in the City of San Leandro[2] By deed dated March 16, 1959 Sarah Mendonca conveyed parcel A to defendant and on the same day granted defendant an easement of approximately 60 feet in width running north and south across parcel B to Williams Street, which formed the southern boundary of parcel B. This easement, according to the terms of the grant, was ''A non-exclusive, perpetual easement and right of way'' generally for street and utility purposes. The grant further provided that the easement was subject to the following conditions: ''1—In the event the party of the second part, its successors or assigns, desire to use said easement, as set forth herein, the cost of improving same (which shall be approved by the City of San Leandro and according to City of San Leandro specifications) shall be bourne [*sic*] equally by the owner or owners of said Parcel 'A' and by the owner or owners of Parcel 'B' hereinafter described. . . . 3—In the event the Party of the second part herein, its successors or assigns, do not want to use said easement as set forth herein, or to use said easement only for sewer purposes, within a period of three years from the date of this instrument, then this instrument shall be considered null and void.''

Testimony concerning the circumstances surrounding the grant of easement was conflicting: Arthur Mendonca, who had

[1]Plaintiffs have not appealed from that portion of the judgment denying them the injunctive relief which they sought.

[2]Although plaintiffs' complaint and the pretrial order designate parcels A and B as adjoining, it appeared at the trial that a spur track right-of-way owned by the Southern Pacific Company runs approximately east and west between the two parcels, having been in existence since prior to the grant of easement to defendant.

executed the grant of easement as attorney in fact for his mother, Sarah Mendonca, testified that Diane Mason, the real estate broker, requested this easement on behalf of defendant. However, John Thiel, defendant's vice president, who testified on behalf of defendant, stated that defendant had not requested the easement, but that it had been proposed by Diane Mason, who had prepared the actual document.

On March 16, 1962 defendant caused to be recorded the grant of easement and a document entitled "Declaration of Election to Use Easement." This document provided that "Sequoyah Land Associates, a corporation, hereby declares, elects and expresses its desire and intention to use that certain easement granted by Sarah C. Mendonca, a widow, on March 16th, 1959, which grant is recorded concurrently herewith and incorporated herein as follows: . . ." At this point in the instrument the provisions of the grant of easement were set out in full, including descriptions of the easement and of the dominant and servient tenements and the conditions to which the grant was subject. The document concluded with the following language: "The intention and purpose of this declaration is to exercise the option and use the easement granted to Sequoyah Land Associates by the grant as set forth above for all the purposes of the grant (and not to use said easement only for a sewer pipe line)[3] and otherwise to comply with all of the conditions of said grant."

On February 11, 1963 Arthur Mendonca, having inherited parcel B upon his mother's death, conveyed this land to plaintiffs. Commencing in the latter part of 1962, prior to the date on which plaintiffs acquired title to parcel B, and continuing through April 1963, plaintiffs, through letter, telephone conversations, and several face-to-face meetings, advised the officers of defendant that they desired to develop parcel B; that they were prepared to proceed with defendant in improving defendant's easement across parcel B; that they considered the construction of the improvements on the easement to be a matter of some urgency; and that they would appreciate defendant's cooperation in selecting an engineer to determine the requirements, specifications, and costs for

[3]The grant of easement also contained a provision which read as follows: "2—In the event the party of the second part its successors or assigns desire to use said easement only for a sewer pipe line, the cost of installing said sewer pipe line, (which shall be approved by the City of San Leandro and according to the City of San Leandro specifications) shall be borne equally by the owner or owners of said Parcel 'A' and by the owner or owners of Parcel 'B' hereinafter described."

constructing a street on the easement. In addition, plaintiffs furnished defendant with a preliminary sketch of the roadway and an estimate of the costs of constructing this roadway. Throughout these communications defendant remained non-committal as to its plans for proceeding with the development of the easement. However, by letter dated April 9, 1963, Lewis Keller, defendant's secretary, informed plaintiffs that defendant did not desire to proceed with plans for the construction of a roadway across plaintiffs' property at that time. Thereafter, from April 12, 1963 until May 1, 1963 there ensued a series of communications between plaintiffs and defendant. Plaintiffs indicated to defendant that they would proceed with the construction of the roadway and that they expected to be reimbursed by defendant for one-half of the costs incurred. The tenor of defendant's communications to plaintiffs was that defendant asserted its easement rights under the grant; that the determination of the time at which the easement would be developed was solely that of defendant; that the proposal to develop the easement did not at that time fit defendant's plans; that when defendant was ready to proceed with the improvement it would advise plaintiffs so that mutually satisfactory plans could be worked out; that plaintiffs should desist from any activity which would affect the easement; and that if plaintiffs persisted in proceeding with the development they did so at their own risk and expense.

Plaintiffs proceeded with the construction of the roadway along the line of defendant's easement across parcel B upon securing approval of their plans from the City of San Leandro. During the course of construction plaintiffs advised defendant of the nature and cost of the work and, upon completion of the roadway in January 1964, presented defendant with a statement for one-half of the total cost amounting to $44,963.55. Payment was refused by defendant. Subsequently, the roadway was approved by the City of San Leandro and, upon being dedicated as a public street, was named Neptune Drive. Following the filing of the instant action defendant sold parcel A and recorded a document entitled ''Declaration of Election Not to Use Easement.'' In finding for plaintiffs the trial court disallowed an ''overhead'' item and set the actual total cost of the roadway improvement at $42,749.64, of which one-half was assessed against defendant.

### Existence of the Easement

Considering defendant's first contention, namely, that at the time plaintiffs constructed the roadway on their property,

there was in fact no easement in existence, we note that defendant's argument is predicated on the assertion that the language used in the grant of easement is so uncertain as to be unenforceable. Specifically, defendant argues that the grant "can be interpreted to mean that the grantee must use the easement within the 3 year period, or that 'wanting' to use it means at least some action taken in regard to the development of the easement, or that the mere declaration is all that is required." While we agree with defendant that the language of the grant of easement is ambiguous, such ambiguity does not require a conclusion that defendant acquired nothing by the grant. Rather, we are faced with a problem of interpreting the language of the grant of easement in order to determine which interpretation is the proper one.

In construing an instrument conveying an easement the rules applicable to the construction of deeds generally apply. (*Kerr* v. *Brede,* 180 Cal.App.2d 149, 150 [4 Cal.Rptr. 443]; *Eastman* v. *Piper,* 68 Cal.App. 554, 561 [229 P. 1002].)

Accordingly, where the language of a grant of easement is ambiguous, extrinsic evidence is admissible to determine its meaning. (*Schofield* v. *Bany,* 175 Cal.App.2d 534, 536-537 [346 P.2d 891]; *Wright* v. *Best,* 19 Cal.2d 368, 383 [121 P.2d 702]; Code Civ. Proc., § 1856; see *Laux* v. *Freed,* 53 Cal.2d 512, 522-523 [2 Cal.Rptr. 265, 348 P.2d 873].) Where such evidence is properly received the appellate court will accept or adhere to the interpretation adopted by the trial court where the extrinsic evidence is conflicting and conflicting inferences arise therefrom. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 401 P.2d 839]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)

Where, on the other hand, extrinsic evidence is received but there is no conflict in the evidence the interpretation of the instrument becomes a question of law and the appellate court is not bound by the trial court's interpretation of it. (*Parsons* v. *Bristol Development Co., supra,* pp. 865-866; *Estate of Platt, supra,* p. 352.)

In the instant case the only extrinsic evidence contained in the record concerning the interpretation of the grant of easement is the document entitled "Declaration of Election to Use Easement," which was recorded on behalf of defendant, plus the series of communications between plaintiffs and various officers of defendant. This evidence makes it abundantly clear that the officers of defendant, throughout their dealings with plaintiffs, believed that their company

possessed an easement across plaintiffs' property and that by virtue of their "Declaration of Election to Use Easement" they had prevented the grant from becoming null and void pursuant to the terms of condition "3" under the grant. In other words, it was clearly the belief of defendant's officers that in order to prevent the grant of easement from being nullified under condition "3" of the grant, the only action which defendant had to take within three years from the date of the grant was to express its intention to use the easement. Moreover, it is also clear that defendant considered that an easement existed from the filing of a document entitled "Declaration of Election Not to Use Easement" subsequent to the bringing of this action.

■ It is a well-established rule in California that the acts of the parties under and pursuant to an instrument afford one of the most reliable means of arriving at their intention. (*Cutter Laboratories, Inc.* v. *Twining,* 221 Cal.App.2d 302, 312 [34 Cal.Rptr. 317]; *Sierad* v. *Lilly,* 204 Cal.App.2d 770, 774 [22 Cal.Rptr. 580]; *Collins* v. *Home Savings & Loan Assn.,* 205 Cal.App.2d 86, 99 [22 Cal.Rptr. 817].) This rule is stated in the case of *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 311 [266 P.2d 856], as follows: "A construction given a contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will when reasonable be adopted and enforced by the court. [Citation.] The practical construction of a contract made by the parties thereto is the best evidence of what they intended. [Citations.]" ■ In the instant action the trial court found that the grant of easement to defendant was in force at the time of the filing of the action. Although we are not bound by this finding, the interpretation of the subject grant of easement being a question of law since there is no conflict in the extrinsic evidence in the present case (*Parsons* v. *Bristol Development Co., supra,* pp. 865-866.), we are, nevertheless, in accord with the trial court's interpretation of the instrument based upon the extrinsic evidence consisting of defendant's acts and conduct subsequent to the execution of the grant of easement. Accordingly, we conclude that there is no merit to defendant's contention that at the time plaintiffs constructed a roadway on their property there was in fact no easement in existence.

### Right to Reimbursement

The thrust of defendant's appeal is focused on the conten-

tion that, assuming there was an easement in existence in favor of defendant at the time plaintiffs constructed the roadway on their property, plaintiffs, as the owners of the servient tenement, did not have the right to improve defendant's easement and to charge defendant for these improvements without defendant's consent. We know of no statutory or case law in California concerning the rights of a servient tenement owner to make major improvements to an easement which runs across his property and to charge the dominant tenement owner with a portion of the costs of these improvements. Civil Code section 845, which deals with sharing the costs of *maintaining* a right-of-way,[4] and the case of *Holland* v. *Braun,* 139 Cal.App.2d 626 [294 P.2d 51], which concerns apportionment of the costs of *improving* an easement, both relate to apportionment of these costs as between *joint owners* of an easement, that is where the easement itself is owned by more than one person or is attached to parcels of land under different ownership. In *Holland,* the plaintiffs and the defendants were the several owners of land abutting on an unpaved jointly-owned easement to which each owner had a nonexclusive right for road purposes. The plaintiffs wanted to and did, without the defendants' consent, improve the easement by paving it. Relying on Civil Code section 845, the plaintiffs then sought to compel the defendants to pay their proportionate share of the cost of paving the road. Based on these facts both the trial court and the appellate court held that the paving of the road was not "maintaining it in repair" as that term is used in section 845, and that without the defendants' consent to the performing of this work the plaintiffs could not enforce contribution by the defendants for this work.

In view of the foregoing it is apparent that in this state nonconsenting coowners of an easement in the nature of a right-of-way may be compelled to contribute to the keeping of the way in *repair,* but they may not, without their consent, be compelled to contribute to the cost of major improvements.

---

[4]Specifically, Civ. Code, § 845 provides in pertinent part as follows: "The owner of any easement in the nature of a private right of way, or of any land to which any such easement is attached, shall maintain it in repair. If the easement is owned by more than one person, or is attached to parcels of land under different ownership, the cost of maintaining it in repair shall be shared by each owner of the easement or the owners of the parcels of land, as the case may be, pursuant to the terms of any agreement entered into by the parties for that purpose. In the absence of an agreement, the cost shall be shared proportionately to the use made of the easement by each owner."

■ It is equally well settled that as between an easement owner and the owner of the land upon which the easement is situated (i.e., the servient tenement owner), the duty to keep the easement in repair rests on the former rather than the latter. (*Ware* v. *Walker,* 70 Cal. 591, 596 [12 P. 475]; *Durfee* v. *Garvey,* 78 Cal. 546, 551 [21 P. 302]; *Bean* v. *Stoneman,* 104 Cal. 49, 55-56 [37 P. 777, 38 P. 39]; *Herzog* v. *Grosso,* 41 Cal.2d 219, 228 [259 P.2d 429]; *Bailey* v. *Superior Court,* 142 Cal.App.2d 47, 56-57 [297 P.2d 795]; *Conklin* v. *Goodson,* 125 Cal.App.2d 823, 825 [271 P.2d 147].)

Applying these principles to the instant case we must conclude, absent any contractual obligation providing to the contrary, that: (1) If defendant was the sole owner of the easement it was its duty to keep the easement in repair; (2) if defendant and plaintiffs were coowners of the easement because of its nonexclusive nature, then, plaintiffs could require defendant to contribute to the cost of repairing the right-of-way in proportion to the use of the right-of-way made by plaintiffs and defendant; and (3) in either situation, however, defendant could not be compelled to contribute without its consent to the cost of major improvements such as the construction of the subject roadway.

■ The question presents itself, therefore, as to whether under the terms of the grant of easement in the instant case, plaintiffs, as owners of the servient tenement, were authorized to construct the subject roadway improvement on the path of defendant's easement, and, if so, whether one-half of the costs thereof could be charged by plaintiffs to defendant. Condition "1" of the grant of easement, as we interpret it, contemplates that a roadway be constructed along the path of the easement. The reference in said condition and in condition "3" to "use of the easement" means development of the easement by constructing a roadway thereon. The easement itself is described in the grant as a "right of way for use as a roadway, for vehicles of all kinds. . . ." Condition "1" of the grant speaks of *"improving"* the easement according to the City of San Leandro specifications and with the city's approval "In the event . . . [the grantee] desire[s] to use said easement. . . ." (Italics added.) Moreover, condition "3" of the grant, which states that "this instrument shall be considered null and void" in the event that the grantee "do[es] not want to use said easement as set forth herein," is most reasonably susceptible to the interpretation that the grantee must desire to construct a roadway on the easement in order to prevent the grant from being nullified. Finally, we note

that in two of the letters on behalf of defendant from Keller to plaintiffs, Keller uses the phrase ''construction of the easement. . . .''

In accord with this interpretation of the grant of easement, it follows that defendant, by recording its ''Declaration of Election to Use Easement'' in which it stated that it intended to comply with all of the conditions of the grant of easement, must be held to have agreed to the construction of a roadway on the easement and to the obligation to pay one-half of its cost. This interpretation, made by us as a matter of law since there are no conflicts in the extrinsic evidence received with respect to the interpretation of the grant of easement, coincides with that made by the trial court. Moreover, if our scope of review were governed by the principles applicable where conflicting inferences may be drawn from conflicting evidence we would be required to hold that the trial court's interpretation finds substantial support in the evidence.

### Unjust Enrichment

Defendant's final contention is that the payment by it of one-half of the cost to plaintiffs of improving defendant's easement would constitute unjust enrichment to plaintiffs. On this issue the trial court found that the improvements to said easement were for the benefit of both the servient and dominant tenement owners and for the benefit of both parcel A and parcel B, and specifically found that such improvements were not solely for the benefit of plaintiffs and the property owned by them. We have concluded that these findings are substantially supported by the following evidence in the record and that accordingly defendant's contention is without merit: Witnesses for defendant testified that their property was otherwise landlocked or that they were concerned about being landlocked; that the easement was advantageous to defendant; that defendant recorded its ''Declaration of Election to Use Easement'' in order to perfect the easement and that defendant wanted to comply with all of the terms of conditions of the grant; and that the right-of-way was frequently crossed from defendant's property onto plaintiffs' property. The record discloses, moreover, that the paved roadway extends to the railroad right-of-way separating parcel A and parcel B. Since there is nothing in the record to indicate that the railroad right-of-way prevented defendant from having access to the paved roadway, the trial court was justified in drawing the inference that a 60-foot wide paved roadway, consisting of a dedicated public street, running di-

rectly from defendant's land to Williams Street, a public thoroughfare, was of a permanent, practical and substantial benefit to parcel A.

That portion of the judgment appealed from is affirmed.

Sullivan, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1966.