**SENTRY ROYALTY COMPANY, Appellant,**

**v.**

**Dorothy Faye KIMMEL and Paul Kimmel, Appellees.**

Court of Appeals of Kentucky.

Dec. 11, 1970.

Dan Cornette, Jarvis, Cornette & Payton, Greenville, for appellant.

Alfred C. Ross, Greenville, Bennett Bratcher, Morgantown, for appellees.

CULLEN, Commissioner.

In the process of strip-mining the No. 11 coal from a tract of land owned by Dorothy Faye Kimmel, under a mineral lease which expressly authorized strip-mining, Sentry Royalty Company deposited the overburden from the first "cut" in a spoil bank on a slope around 75 feet above a partially uncompleted dwelling house owned by Mrs. Kimmel. Some two years later, during a rainy season, the spoil bank slid down the slope, destroying the house and a water well. Mrs. Kimmel and her husband brought action against Sentry Royalty Company for damages, alleging negligence. Under instructions submitting the issue of whether Sentry had acted arbitrarily, wantonly or maliciously in regard to creating and leaving the spoil bank, the jury returned a verdict awarding the Kimmels $3,500 in damages of which $3,000 was for the house and $500 for the well. Sentry has appealed from the judgment entered on that verdict.

Sentry's sole contention is that its motion for judgment n. o. v. (properly preceded by a motion for a directed verdict)

should have been sustained, because there was insufficient evidence to sustain a finding that Sentry had acted arbitrarily, wantonly or maliciously.

The mineral lease under which Sentry did the strip-mining gave Sentry the right "to make such use of the surface of the leased premises as it may find necessary or convenient in the recovery of the leased coal." Under such a lease the lessee is liable for damage to the surface (including damage to dwellings or other structures) only in the event of an arbitrary, wanton or malicious exercise of the granted right to use the surface. See Blue Diamond Coal Company v. Neace, Ky., 337 S.W.2d 725; Martin v. Kentucky Oak Mining Company, Ky., 429 S.W.2d 395.

On the submitted issue, the only evidence offered by the Kimmels was (1) that Sentry *knew* that the spoil bank, as placed, eventually would slide down into the house and well, and (2) that it would have been *physically possible* for the spoil bank to have been moved or not to have been placed where it was. Sentry admitted both of those facts, but introduced evidence that it would not have been economically practicable to move the spoil bank or not to have placed it where it was. Sentry's evidence was that it commenced its stripping operations, according to standard procedures in the industry, at the outcrop line on the edge of the coal field, above the Kimmel house; that in making the first "cut" with the shovel the overburden was deposited off the coal field, so as not to cover coal that was to be mined; that on the second "cut" the overburden from that cut was deposited in the trench made by the first cut, from which the coal had been taken out; and that this procedure was followed in series as the work progressed. It was not practicable to attempt to put the overburden from the first "cut" back into the trench made by that cut, at the time of making the second cut, because the shovel arm would not reach far enough to do that. Nor was it practicable

to run the shovel down the trench of the first cut on a special run, just to move the overburden back into the trench, because this would involve substantial additional time and expense. Sentry's evidence showed that the spoil bank could have been *moved* by bringing in special equipment, but that the cost would have been around $7,500. The evidence further was that the placing of the spoil bank close above the Kimmel house could have been avoided simply by not mining the acre of coal nearest the house, but that this would have meant leaving almost 8,000 tons of coal unmined, which would have created a substantial loss of revenue. Expert testimony for Sentry was that their mining was carried on in an ordinary, routine, prudent and proper manner; there was no expert testimony to the contrary.

On the foregoing evidence we can find no basis for a finding that Sentry acted arbitrarily, wantonly or maliciously. Its decision to place the spoil bank where it did, and to leave it there, was made on the basis of substantial economic considerations and not out of malice or a callous disregard for consequences. It did not have two *equal* choices, neither of which would cause it any detriment, such that the choice of the one that damaged the Kimmels could have been said to be arbitrary.

It is unfortunate that the house and well were destroyed. It must be remembered, however, that the Kimmels deliberately conveyed to the lessee, with the strip-mining rights, the right to use the surface as he might find necessary *or convenient* in the recovery of the coal. And the evidence showed that they received over $40,000 in royalties from the lease.

The judgment is reversed with directions to enter judgment dismissing the complaint.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, NEIKIRK, OSBORNE, REED and STEINFELD, JJ., concur.