Jacob CARR, Jr., Rockcastle Villa Partnership and Carr Co. of Corbin, Inc., Appellants,

v.

Clyde BARNETT and wife, Minnie Lee Barnett, Wayne Stewart and wife, Ruby Stewart, Clyde Linville and wife, Margaret Linville, Roy G. Brown and wife, Flora Mae Brown, Appellees.

Clyde BARNETT and wife, Minnie Lee Barnett, Wayne Stewart and wife, Ruby Stewart, Clyde Linville and wife, Margaret Linville, Roy G. Brown and wife, Flora Mae Brown, Cross-Appellants,

v.

Jacob CARR, Jr., Rockcastle Villa Partnership and Carr Co. of Corbin, Inc., Cross-Appellees.

Court of Appeals of Kentucky.

April 6, 1979.

Robert L. Milby, Hamm, Taylor, Milby & Farmer, London, for appellants and cross-appellees.

Carl R. Clontz, Clontz & Cox, Mt. Vernon, for appellees and cross-appellants.

Before HOGGE, LESTER and VANCE, JJ.

LESTER, Judge.

Plaintiffs below, appellees in the direct appeal, recovered a judgment awarding them damages for unauthorized removal of their dirt against Jacob Carr, Jr. and C. and C. Contracting Corporation, the latter of which is not a party to this appeal, and an order granting plaintiffs an easement by implication over land owned by Rockcastle Villa Partnership. However, those same parties were denied judgment permitting them to connect with certain utility lines installed by Jacob Carr, Jr. on land owned by the partnership. Carr Co. of Corbin, Inc. was dismissed as a defendant in the circuit court and nothing is requested against that entity before this tribunal.

Barnett, Stewart, Linville and Brown owned a fifteen acre tract of land abutting on Old Brodhead Road in Mt. Vernon. They entered into negotiations with Jacob Carr, Jr. to construct a housing project on part of the land, and in furtherance of the scheme, they formed a partnership in which they owned 4% and Carr and several others had 96%. Carr was to be the managing partner. Barnett and his co-owners conveyed the five acres of their tract that fronted on the highway to the partnership but failed to retain an easement for purposes of ingress and egress to the remaining land.

The prime contractor for the construction of the project was Carr Co. of Corbin, Inc. which, by way of brief, appellants claim is owned by Jacob Carr, Jr. C. and C. Contracting Corporation was the sub-contractor for grading and drainage work. During the last mentioned phase, additional fill dirt was required and after an unsuccessful attempt to obtain it elsewhere, Carr directed the foreman of C. and C. to get it from appellees' adjoining land which was done to the extent of 917 cubic yards.

Prior to the conveyance of the land to the partnership, the appellees maintain there was a parol agreement whereby the partnership was to convey the access road and utility lines to the city so that the owners of the ten acres would be afforded ingress to their land and would be permitted to connect to water and sewer pipes. When the grantors made demand for the balance due on the purchase price of the five acre tract from Carr, he replied that he would pay only if Barnett and the others would surrender to him their interest in the partnership and bear a proportionate share of the cost of the street and the utilities. The plaintiffs below refused to comply and brought an action for the balance of the purchase price, damages for the removal of the dirt, an easement of necessity and for an order permitting them to connect to the utility services. The lower court agreed with the appellees in their first three contentions and a judgment was entered awarding them their money, an easement and damages against Carr personally and C. and C. Construction for the value of the fill dirt. However, the court refused permission to connect with the lines saying that such an act was prohibited by the Statute of Frauds.

C. and C. did not appeal, but Carr maintains that since he was acting as agent for the prime contractor, Carr Co. of Corbin, Inc., and no judgment was entered making it liable, then such a decision could not be reached as to him. He also maintains that the easement was improper when the grantors voluntarily executed a conveyance and failed to retain a right-of-way. On cross-appeal, the land owners contend the Statute of Frauds does not act as a bar to their agreement for connecting the pipes.

It is undisputed that Carr was aware of the boundary lines between the five acre and ten acre tracts, and in spite of his denials, the jury agreed with the landowners that there was no authorization given to Carr to go upon their land and remove the fill dirt. The direction given to C. and C.'s foreman to enter upon the abutting property and remove the dirt was tortuous in nature, and in the language of the *Restatement (Second) of Agency* § 343 (1958):

An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege

of the principal, or a privilege held by him for the protection of the principal's interest, or where the principal owes no duty or less than the normal duty of care to the person harmed.

See the comments under § 343, as well as § 344 and § 351 to the effect:

An agent who directs or permits conduct of another under such circumstances that he should realize that there is an unreasonable risk of physical harm to others or to their belongings is subject to liability for harm resulting from a risk which his direction or permission creates.

Thus, we note that an agent is personally liable for his own tortuous acts even though performed within the scope of his employment and under conditions which impose liability upon the principal also. *Kentucky-Tennessee Light and Power Co. v. Nashville Coal Co.*, 37 F.Supp. 728 (E.D. Ky.1941). But it has long been the law of this jurisdiction that the party harmed can look for reparation from the agent only without the necessity of proceeding against the principal. *Pool v. Adkisson*, 31 Ky. 110, 1 Dona 110 (1833).

We turn now to the issue concerning the easement. The applicable doctrine is found at 2 *American Law of Property* § 8.38 at 259 and 260 (A. J. Casner ed. 1952), namely:

Among the circumstances which contribute to the inference that an easement was intended to be created is the need for an easement. If the need is very great, an inference will be drawn that an easement was intended to be created.

.    .    .    .    .

Cases of land entirely shut off from access to a highway by land of others present a quite clear case of implication. So clear is the implication that it will be made even in favor of a grantor who has conveyed part of his land in such a way as to leave the remainder without access to a highway.

See also Gaillard, Reservation of Easements by Implication, 22 *Ky.L.J.* 313 (1934).

We agree with appellant that "the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor" as is recited in *Himler Coal Co. v. Kirk*, 205 Ky. 666, 266 S.W. 355 (1924); but reading that opinion in its entirety, we note that the court, quoting from *McGurn v. L. & N. R. Co.*, 177 Ky. 835, 198 S.W. 222, 223 (1917), said:

.    .    . where there is a grant of land with full covenants of warranty, and without express reservation of easement, there can be no reservation by implication, *unless the easement is strictly necessary*; the term "necessary" meaning there can be no other reasonable mode of enjoying the dominant tenement without the easement. (emphasis added)

In the case at bar, the tract upon which the housing project is situated separates appellees' ten acres from Old Brodhead Road, and there is no evidence that the property can be reached without crossing appellants' land. Therefore, the implied easement affords not a mere convenience as in *Marrs v. Ratliff*, 278 Ky. 164, 128 S.W.2d 604 (1939), but a necessary means of ingress and egress. The circuit court was correct.

We find no Kentucky authority which would require appellees to bear a part of appellants' expense attendant upon the construction of the street, but if the roadway is not dedicated to the municipality and if the plaintiffs below create major maintenance problems, then that would be the proper subject for future consideration. For some general rules pertaining to easement repairs, see *McManus v. Sequoyah Land Associates*, 240 Cal.App.2d 348, 49 Cal.Rptr. 592, 20 A.L.R.3d 1015, 1023 (1966).

Upon cross-appeal, the plaintiffs below urge that the trial court erred in holding that the parol agreement as to connecting the sewer and water lines was violative of the Statute of Frauds. In the direct appeal, the appellant makes no mention of this issue and as cross-appellees, they filed no brief. Under such circumstances, we could invoke the penalties provided in CR 76.12(8)(c); however, we reverse the trial court on the merits.

Connecting with utility lines situated upon another's property is a privilege to use his land and does not create an interest in that land, and therefore, is nothing more than a license. 2 *American Law of Property*, § 8.109 et seq. at 315. Thus, it can be created by parol, and the license being part of the consideration for cross-appellees' land, it cannot be revoked. Moreover, "[n]either the requirements of the common law respecting the use of sealed instruments in creating incorporeal interests nor the provisions of the Statute of Frauds relating to the creation of interests in land are applicable to their (licenses) creation." 2 *American Law of Property* § 8.118 at 322 and *Burgess v. Swetnam*, 257 Ky. 64, 77 S.W.2d 385 (1935).

On direct appeal, the judgment is affirmed and upon cross-appeal, it is reversed.

All concur.