David VORHERR and Dora
Vorherr, Appellants

v.

Brett COLDIRON; Lana Long; Mark
Stutler; Nancy L. Biel, as Trustee un-
der Self Declaration of Trust Dated
July 31, 2002; Nancy L. Biel; Raymond
C. Biel; James Fraley; and Xiaoqun
Liao, Appellees

NO. 2015-CA-000763-MR

Court of Appeals of Kentucky.

Filed May 26, 2017; 10:00 A.M.

Rehearing Denied July 19, 2017

BRIEF FOR APPELLANT: Michael Scott McIntyre, Robert Thomas Razzano, Cincinnati, Ohio.

BRIEF FOR APPELLEE: Paul J. Vesper, Covington, Kentucky.

BEFORE: COMBS, DIXON AND NICKELL, JUDGES.

## OPINION

DIXON, JUDGE:

Appellants, David and Dora Vorherr, appeal from an order of the Kenton Circuit Court granting summary judgment in favor of Appellants, Brett Coldiron and Lana Long, Nancy L. Biel, individually and as Trustee under Self Declaration of Trust dated July 31, 2000, Raymond Biel, James Fraley, Xiaoqun Liao, and Mark Stutler(collectively "Coldiron").

This case involves an easement dispute between neighbors, primarily the Vorherrs and Coldiron. Because a large part of the controversy herein stems from the confusing procedural posture of the case, a lengthy recitation of the facts and procedural history is warranted. In March 1986, Don and Joanne Lewin, who owned property in the Devou Park area of Northern Kentucky that is now owned by the parties herein, subdivided their land. Lots 1 and 2, located at 1103 Ridgeway Court, were originally conveyed by the Lewins to Michael Higgins in 1986 by a deed that contained an easement providing a "non-exclusive easement to use a private roadway abutting the rear line of said lot for means of ingress and egress." Eventually, Lots 1 and 2 were conveyed in 1999 to the Vorherrs by a deed that contained the same easement language. Coldiron resides at property known as 1105 River Hills Drive which is located directly beneath (topographically) and to the southeast of the Vorherr property, abutting the Vorherrs' rear property lines. This property was conveyed to Coldiron by the Lewins in 1996.

The property line between the Vorherr and Coldiron properties is along a steep drop-off covered with trees and brush. At the bottom, the land flattens out and a paved roadway has been constructed along the same pathway upon which a dirt or gravel road existed at the time of the Lewin subdivision of the property. This roadway, once referred to as Lewin Lane but now known as River Hills Drive, provides access from Ridgeway Court to the properties owned by Coldiron, the Fraleys and the Biels. From 1999 until 2006, the Vorherrs periodically used the roadway to walk from their backyard to Ridgeway Court, as well as to maintain their utilities that run along on over their rear property line. Although a gate was erected where River Hills Drive intersects with Ridgeway Court, the Vorherrs claimed they had been provided with the access code. However, sometime in 2006 the Vorherrs misplaced the code and when they requested it from Coldiron in order to have repairs made on their sewer lines, Coldiron refused them access.

Apparently numerous discussions were had among the parties and, when a compromise could not be reached, the Vorherrs filed a complaint on November 23, 2011, in the Kenton Circuit Court against Coldiron seeking a declaration of their rights to use River Hill Drive pursuant to the access easement contained in their deed. The Vorherrs also sought injunctive relief and monetary damages for obstruction of passway. All of the other neighboring landowners/Appellees were made defendants in an amended complaint filed on

September 12, 2012. Coldirons thereafter filed counterclaims against the Vorherrs and cross-claims against Stutler.

In March 2013, the Vorherrs and Coldiron filed cross motions for summary judgment. As evidence in support of their motion, the Vorherrs attached written opinion letters solicited *by Coldiron* from two separate Kentucky real estate experts, Fred Summe and William Deupree, that both concluded the Vorherrs had a non-exclusive access easement over River Hills Drive. Nevertheless, on September 23, 2013, the trial court issued an opinion and order denying the Vorherrs' motion but granting summary judgment in favor of Coldiron. Therein, the trial court found:

The Vorherrs' deed ... contains the following language:

BEING ALL OF LOTS ONE (1) AND TWO (2), DONALD LEWIN'S RE-SUBDIVISION OF KENTON HILLS, SECTION I, AS SHOWN ON ORIGINAL PLAT NO. 1084 OF THE KENTON COUNTY CLERK'S RECORDS AT CONVINGTON, KENTUCKY, LOTS ONE (1) AND TWO (2) FRONT 100 FEET EACH ON RIDGEWAY COURT, THE EAST LINE OF LOT 1 IS 118.

SUBJECT TO EASMENTS, COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD....

BEING THE SAME PREMISES CONVEYED TO THE GRANTORS HERE BY DEED RECORDED IN DEED BOOK 1211, PAGE 304 OF THE KENTON COUNTY CLERKS AT COVINGTON, KENTUCKY.

ALSO, NON-EXCLUSIVE EASEMENT TO USE A PRIVATE ROADWAY ABUTTING THE REAR LINE OF SAID LOT FOR MEANS OF INGRESS AND EGRESS ...

Note the property description does not close, the end of paragraph one appears to be missing; at the end of that section of the 1986 deed from Lewin to Higgins, book 914, page 107, the first grant of these lots following the Lewin re-subdivision, it reads, "the east line of Lot 1 is 118.61 feet, the west line of Lot 2 is 113.08 feet." The easement in that Higgins deed is noted, substantially identical to the Vorherr deed as, "ALSO, a non-exclusive easement to use a private roadway abutting the rear line of said lot for means of ingress and egress." The evidence in the record shows no reference to an easement for the Vorherr property in the chain of title to the Coldiron property.

Plaintiffs acknowledge ... that the survey of the property reveals that the "Roadway runs near and parallel to the stated Easement, virtually touching the stated Easement at one point, but the Roadway is technically a few feet to several yards to the south of the stated Easement." Thus the roadway does not "touch and concern" plaintiff's property.

The description of the easement from its beginning in the Higgins deed has been a bad call. The court finds a latent ambiguity therein as, although it is not clear from the face of the deeds, when examining the plats or visiting the site it becomes clear that no roadway has ever abutted the rear lines of Lots 1 and 2.... An easement may be created by an express written grant consistent with the formalities of a deed.... One of the primary requirements for a valid deed is an accurate description of the land by which the property can be precisely located, and where there is an ambiguity a specific call will prevail over a general description.... Therefore the specific measurements from the existing dedicated road, Ridgeway Court, control over a general reference to use of a roadway, River Hill Drive, and any easement

would have been the use of the steep grade which actually abuts the property of plaintiffs; however, they concede that no roadway has ever existed there so the purported easement as described is meaningless. Plaintiffs do not have a valid, enforceable easement in the actual roadway. (Citations omitted).

The trial court additionally found that the Vorherrs did not acquire an easement by prescription or estoppel because Coldiron had continuously, open, and notoriously asserted ownership over the property for a period of fifteen years and any use of the property by the Vorherrs was permissive. Interestingly, the trial court made no mention of the two expert opinions to the contrary. Further, although the trial court did not reference the Vorherrs' claims against the other defendants, nor Coldiron's counterclaim against the Vorherrs and cross-claim against Stutler, the order stated, "This case is hereby DISMISSED WITH PREJUDICE."

On October 11, 2013, the Vorherrs filed a motion to clarify (1) whether the trial court's summary judgment did, in fact, adjudicate all claims so that CR 54.02 finality language would be appropriate and (2) whether essential/emergency utility access[1] remained available to them over the easement or roadway. Coldiron responded with a motion to set a briefing schedule and trial date to resolve the counter claim and cross-claim. On October 21, 2013, the trial court entered an order stating, "The court being sufficiently advised hereby ORDERS that the summary judgment order entered in this case on September 23, 2013, is not final and appealable at this time. The parties having agreed to a briefing schedule this case remains on the active docket."

On December 12, 2013, the trial court entered a second order relating to the Vorherrs' motion to clarify that provided in pertinent part:

Plaintiffs assert that the judgment as entered did not deal with access for sewer maintenance. Upon further review of the record, the court does not find that such question was before the court, the complaint and amended complaint concerning only the existence of an express easement of ingress and egress to a private roadway. While references were made in the record to allowing utility workers and plumbers to use the roadway to maintain plaintiffs' property, that in itself is insufficient to raise a question of a sewer easement. Furthermore, while the deeds contain a standard reference to easements and restrictions of record, and the plats have a sewer easement marked, it is unclear from the record whether that marked line is the sewer easement at issue and no copy of a recorded plaint or other document with the sewer easements spelled out has been introduced. Plaintiffs have now tendered a second amended complaint which adds Count VI, right to use and maintain utilities in existence for over thirty years. If the sanitation district, water district or energy company has a primary easement it has a right to enter upon the servient property in the immediate vicinity of its line for the purpose of repairs and maintenance, ... and if private sewer and utility easements exist for the benefit of plaintiffs' property they have a right to access them for necessary repairs and mainte-

---

1. Apparently, the Vorherrs had previously maintained sewer lines and electrical lines at the rear of their property by accessing such from the roadway. An ongoing dispute throughout the litigation was Coldiron's denial of access to the Vorherrs' plumber to remediate a sewer blockage located in lines running on the Coldiron property.

nance ...; these rights are not dependent upon an easement of ingress and egress for general purposes. Coldiron in his reply does not object to the filing of the second amended complaint. The court denies the motion to clarify as to the judgment on the roadway easement but allows the filing of the second amended complaint as to the new count regarding the right to use and maintain utilities. (Citations omitted).

The order also granted additional time for Stutler to file pleadings pertaining to Coldiron's cross-claim.

Thereafter, on January 22, 2014, the Vorherrs filed a motion for summary judgment on Count VI, arguing that they were entitled to the continuing use and maintenance of their private sewer line and other utilities that had run through Coldiron's property for the previous thirty years. On February 4, 2014, Coldiron filed a "Motion for (I) setting a schedule to respond to summary judgment, (II) set a discovery schedule on Count VI and to compel discovery and (III) for an informal pretrial conference." A second supplemental motion was filed wherein Coldiron stated that "the only remaining issue is the (i) basis for granting any sewer line easement to the Plaintiffs (ii) what is the basis of the easement claim for Lot 1 (iii) what is the basis for the easement claimed for Lot 2 (iv) can Plaintiffs prevail on these various easement theories advanced in their amended pleadings and (v) is finality granted to any of the Court's rulings so the Plaintiffs can advance the appeal they have already indicated they intend to do."

On September 22, 2014, the trial court entered an order denying the Vorherrs' motion for summary judgment. Therein, the trial court parroted much of the language from the first summary judgment order and the December 12, 2013 clarification order and then concluded:

If the sanitation district, water district or energy company has a primary easement it has a right to enter upon the servient property in the immediate vicinity of its line for the purpose of repairs and maintenance, *Farmer v. Kentucky Utilities Company*, 642 S.W.2d 579, 581 (Ky. 1982), and if private sewer and utility easements exist for the benefit of plaintiffs' property they have a right to access them for necessary repairs and maintenance. *Blair v. City of Pikeville*, 384 S.W.2d 65, 67 (Ky. 1964); these rights are not dependent upon an easement of ingress and egress for general purposes. Easements may be created by express written grant, implication, prescription, or estoppel. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001). However, "[c]onnecting with utility lines situated upon another's property is a privilege to use his land and does not create an interest in that land, and therefore, is nothing more than a license." *Carr v. Barnett*, 580 S.W.2d 237, 241 (Ky. App. 1979).

Easements are not favored, and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement by clear and convincing evidence. *Carroll v. Meredith*, 59 S.W.3d 484, 489-490 (Ky. App. 2001). *Gosney v. Glenn*, 163 S.W.3d 894, 901 (Ky. App. 2005). Such evidence is not currently found in the record before the Court and the standard for summary judgment has not been met.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion of plaintiffs for summary judgment is DENIED.

The docket entry for September 22, 2014 similarly reflects an order denying the Vorherrs' motion for summary judgment. Thereafter on January 22, 2015, the

Vorherrs filed a motion "for determination of no just reason for delay under CR 54.02(1) regarding September 23, 2103 summary judgment." Therein, they argued that the only remaining claim to be adjudicated was count VI regarding the right to use and maintain utilities, which was separate and distinct from the claims adjudicated by the September 23rd order, namely whether the easement in their deed granted them the right to ingress and egress over the roadway. The Vorherrs sought finality language as to that claim so they could proceed with an appeal.

On April 16, 2015, the trial court entered an order denying the Vorherrs' motion requesting finality of the September 23, 2103, summary judgment. After reciting the procedural history of the case, the trial court noted,

> Although designated a defendant Stutler's interests are comparable to those of Plaintiffs and the original [September 23rd] Summary Judgment would bar him from ever asserting a right to the easement that was denied therein. Stutler had originally appeared and filed responsive pleadings that asserted no new claims and sought to be dismissed from the case on October 5, 2012. The cross-claim against Stutler requested that any interest he had in their property be asserted or forever barred and claimed that any interest he have [sic] had been terminated, abandoned, lost, expired or barred; Stutler filed an answer to the cross claim issuing a general denial and requesting its dismissal on January 2, 2014. Contemporaneously therewith he also filed an answer to the second amended complaint with general denials, a statement that Plaintiffs' complaint failed to state a cause of action against him upon which relief may be granted and that Plaintiffs' claims may be barred or offset by accord and satisfaction, waiver or estoppel. Although the other

parties in the case referred to his cross-claim as having been unresolved, the cross-claim against him was merely a demand that he assert any interest he claimed on their land and upon review of all of the responsive pleadings filed by Stutler in this case it is clear that he has not asserted any interest, claims or defenses and so the prior [September 23, 2013] summary judgment denying the existence of the easement and dismissing the case had in fact resolved the Stutler claim as well.

Plaintiffs subsequently moved for summary judgment on their utility access claim, the only remaining claim before the Court. The Court by Order entered September 22, 2014, denied summary judgment to Plaintiffs, finding that connecting with utility lines situated upon another's property is a privilege to use his land and does not create an interest in that land as its nothing more than a license.

Defendants did not move for summary judgment, but the Order was in reality a full resolution of all the remaining claims just as if the Court had granted summary judgment to defendants. Quoting Blackstone, the court in *Adkins v. Carol Mining Co.*, 281 Ky. 328, 136 S.W.2d 32, 35 (1940), stated, "Final judgments are such as at once put an end to the action, by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for...." There has been no genuine issue of material fact remaining in this case since the September 22, 2014, Order was entered declaring that Plaintiffs are not entitled to the remedy they sued for. That Order having conclusively disposed of all of the claims remaining between all parties in the case, it was a final and appealable order upon entry, by its very nature and pursuant to CR 54.01, and

the language of CR 54.02(1) was not required to make it so.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion of Plaintiffs is DENIED. This case shall be designated as having been finally adjudicated as of September 22, 2014, and it shall be removed from the active docket of the Court.

The Vorherrs thereafter filed an appeal in this Court from the trial court's summary judgment of September 23, 2013, the order denying summary judgment of September 22, 2014, and the final order on April 16, 2015.

As a preliminary matter, we must first address Coldiron's motion in this Court to dismiss the appeal for lack of jurisdiction. Coldiron claims that both the September 23, 2013 summary judgment and the September 22, 2014 summary judgment were final and appealable orders and thus the Vorherrs' notice of appeal is untimely. Coldiron further argues that the Vorherrs failed to raise the issues regarding the April 16, 2015 order in their Prehearing statement, thus precluding our review of that order as well. We find no merit in either argument.

■ A final and appealable judgment is one that adjudicates all rights of all the parties or is made final under CR 54.02. *See* CR 54.01. In an action involving multiple claims and/or multiple parties, CR 54.02 permits the trial court to make an otherwise interlocutory order final and appealable in certain circumstances. However, under CR 54.02, an interlocutory order may only be made final and appealable if the order includes both recitations—(1) that there is no just cause for delay, and (2) the decision is final. Strict compliance with the rule is required. *Peters v. Board of Education*, 378 S.W.2d 638, 639 (Ky. 1964). A trial court's failure to conclude both recitations in a judgment renders it interlocutory and nonappealable. *See Turner Construction Co. v. Smith Brothers, Inc.*, 295 S.W.2d 569 (Ky. 1956). *See also Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722 (Ky. 2008).

■ Coldiron's argument that the 2013 summary judgment was final and appealable is disingenuous at best and certainly contrary to his conduct in the trial court. In response to the Vorherrs' October 11, 2013, motion for clarification as to finality, Coldiron explicitly and in no uncertain terms stated that the case was not final and requested a trial date on the counterclaim and crossclaim. The trial court agreed at that time and entered an order ruling that the September 2013 summary judgment "was not final and appealable at this time." No motion for reconsideration of that order was made. Nor did Coldiron oppose the trial court's decision to allow the Vorherrs the opportunity to amend their complaint to add count VI. To be sure, that amendment was not a new cause of action, but related back to the initial complaint. CR 15.03. Thus, even if Coldiron's counterclaim and crossclaim were subsequently resolved, Count VI remained, thus rendering the summary judgment interlocutory pursuant to CR 54.

We likewise disagree with the trial court's treatment of the 2013 summary judgment in its April 2015 order. Despite having explicitly ruled on October 21, 2013, that the summary judgment was not final and appealable and then additionally recognizing on December 12, 2013, that Stutler was entitled to additional time to respond to the cross-claim as well as to the amended complaint, the trial court in 2015 inexplicably ruled that the 2013 summary judgment resolved all issues against Stutler as well, thus somehow rendering that a final order. Notwithstanding the fact that the amended complaint added an additional issue that had not been resolved, the

trial court was specifically asked to designate the order as final and appealable under CR 54.02 and declined to do so. Accordingly, we conclude that the September 23, 2013, judgment was nothing more than interlocutory order.

■ We are even more perplexed by the trial court's April 2015 ruling that its denial of the Vorherrs' motion for summary judgment in 2014 was actually a grant of summary judgment in favor of Coldiron. The trial court made such ruling despite the fact that Coldiron had not filed a motion for summary judgment.

■ The standard for summary judgment in Kentucky is well-settled. In *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991), this Court announced that summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'" (Citation omitted). While CR 56.30 certainly speaks in terms of whether summary judgment should be granted or denied for the *movant*, a trial court may grant summary judgment in favor of a non-moving party "where overruling the [movant's] motion for summary judgment necessarily would require a determination that the [non-moving party was] entitled to the relief asked, [and] a motion for summary judgment by the [non-moving party] would have been a useless formality." *Osborne v. Commonwealth*, 185 S.W.3d 645, 650 (Ky. 2006)(*quoting Collins v. Duff*, 283 S.W.2d 179, 183 (Ky. 1955)). This also requires that the trial judge have all pertinent issues before him at the time the case is submitted. *See Green v. Bourbon County Joint Planning Commission*, 637 S.W.2d 626, 630 (Ky. 1982).

Assuming, arguendo, that the 2014 order denying the Vorherrs' motion for summary judgment necessarily required a determination that Coldiron was entitled to the relief and his motion for summary judgment would have been a useless formality, the trial court's order failed to memorialize such. In denying the Vorherrs' motion, the trial court explicitly noted that "evidence [was] not *currently* found in the record before the Court and the standard for summary judgment [had] not been met." (Emphasis added). The Vorherrs were justified, at that point, in believing that they had not met the standard for summary judgment and that their claim would proceed to trial.

■ "It is elementary that a court of record speaks only through its records." *Allen v. Walter*, 534 S.W.2d 453, 455 (Ky. 1976). An order of a Kentucky court "should be in a simple form clearly reflecting the intention of the trial judge" to avoid the "destruction of any certainty as to the effect of judgments and a state of chaos in judicial proceedings." *Commonwealth v. Hicks*, 869 S.W.2d 35, 37-38 (Ky. 1994)(*overruled on other grounds in Keeling v. Commonwealth*, 381 S.W.3d 248 (Ky. 2012)). Absolutely nothing in the language of the 2014 order denying summary judgment placed the Vorherrs on notice that the trial court had resolved all issues and that the case was final and appealable. It was not until over six months later, and clearly beyond the expiration of any time to appeal, that the trial court indicated that the 2014 order "was in reality a full resolution of all the remaining claims...." To the contrary, we are of the opinion that the trial court's 2015 order was error and the 2014 order denying summary judgment in no manner resolved all claims in the case. Thus, that order, like the 2013 summary judgment order, was interlocutory.

Finally, we are confused by Coldiron's argument that the Vorherrs failed "to preserve any issue related to the Civ. R. 54.02 ruling in the Pre-Hearing Statement" with respect to the April 16, 2015 order. Pursuant to CR 76.03(4), within twenty days after filing a notice of appeal, an appellant shall file with the Clerk of the Court of Appeals a pre-hearing statement which contains the information set forth in said rule. In answering the inquiries required by CR 76, the appellants answered the following question, in pertinent part:

7. Briefly state issues proposed to be raised on appeal, including jurisdictional challenges and any question of first impression. . . .

Regarding Appellants' claims to an easement for utilities (Count VI of Second Amended Complaint), Appellants propose to raise the following issues: 1) whether the trial court erred in determining that its denial of Appellant's motion for summary judgment operated as a grant of summary judgment in Appellees' favor[.]

That determination was made by the trial court in only one place, namely the April 16, 2015 order, and was the reason for declining to designate the summary judgment order as final and appealable in response to the motion to do so.

For the reasons previously set forth, we deny Coldiron's motion to dismiss this appeal. Without question, both the 2013 summary judgment order and 2014 summary judgment order were interlocutory as issues remained in the case. As such, we will now turn to the merits of the Vorherrs' appeal.

The Vorherrs first argue that the trial court erred in granting summary judgment in favor of Coldiron and finding that no access easement existed. The Vorherrs point out that the trial court expressly found a latent ambiguity in the deed conveying the access easement, noting a discrepancy between the metes and bounds description and the reference to the roadway described in the easement. Despite having determined that an ambiguity existed, the trial court ignored all of the unchallenged evidence, including the opinions of the Coldiron's two experts, and simply concluded that because a sliver of land separated the Appellant's property line from the roadway, the access easement was a "bad call" and therefore "meaningless."

Our task in reviewing a grant of summary judgment is to determine whether the circuit court correctly concluded that no genuine issue exists as to any material facts, and whether based on such facts the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Because only legal questions and the existence, or non-existence, of material facts are considered by the appellate court, a grant of summary judgment is reviewed *de novo*. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Furthermore, we owe no deference to the trial court's interpretation of the access easement and deed because "the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (*citing First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000)); *see also Cantrell Supply Inc. v. Liberty Mutual Insurance Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) ("Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to de novo review."). Significantly, however, if there is an ambiguity in the access easement, this is a material fact about which there is a genuine issue pre-

cluding summary judgment. *See Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974); CR 56.03.

 "[B]ecause our resolution of the ambiguity question will dictate how our interpretive analysis will proceed," we must first determine whether the access easement is ambiguous. *Frear*, 103 S.W.3d at 106. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations." *Cantrell Supply Inc.*, 94 S.W.3d at 385; ("An ambiguous contract is one capable of more than one different reasonable interpretation." *Frear*, 103 S.W.3d at 106 (citations omitted)); *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. 1994). Where the contract's language is clear and unambiguous, the agreement is to be given effect according to its terms, and "a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear*, 103 S.W.3d at 106. Importantly, in construing a contract or written instrument, the goal "is to effectuate the intentions of the parties." *Cantrell Supply Inc.*, 94 S.W.3d at 384. Hence, in the absence of ambiguity, the parties' intention must be gathered from the four corners of the instrument at issue, and extrinsic evidence may not be admitted to vary the instrument's terms. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000).

 Conversely, evidence outside the language of the deed is admissible to explain a latent ambiguity in a deed. *See Thornhill Baptist Church v. Smither*, 273 S.W.2d 560, 562 (Ky. 1954). "A latent ambiguity is one which does not appear upon the face of the words used, and it is not known to exist until the words are brought in contact with the collateral facts." *Id.* (*quoting Carroll v. Cave Hill Cemetery Co.*, 172 Ky. 204, 189 S.W. 186, 190 (1916)). In such instances, the court may refer to extrinsic evidence in ascertaining the parties' intent. *Crouch v. Crouch*, 201 S.W.3d 463, 465 (Ky. 2006). Thus, "where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell Supply Inc.*, 94 S.W.3d at 385; *Frear*, 103 S.W.3d at 106.

 "An easement may be created by express written grant, implication, prescription or estoppel." *Loid v. Kell*, 844 S.W.2d 428, 429 (Ky. App. 1992). Because the access easement at issue herein was included by Lewin in the 1986 deed to Higgins and within the chain of title of the parties, it is an express easement. Moreover, there is no dispute that the roadway referred to in the access easement, now known as River Hill Drive, has existed in some form since Don Lewin originally subdivided his land.[2] Nevertheless, the property description contained in the Vorherrs' deed and the language of the access easement unquestionably conflict as the roadway does not actually abut the rear of the property line. Accordingly, the trial court

---

**2.** Interestingly, one of the first conveyances the Lewins made after subdividing their property was to John and Alice Lewin via warranty deed in 1980. That parcel, now owned by the Fraleys, is located some distance down the roadway past the Vorherrs' property, Lots 1 and 2. The 1980 deed to John Lewin contained an "easement" for "ingress and egress" proceeding "along the rear lines of Lot 1 and 2." The express easement covers the same area as the access easement contained in the Vorherrs' deed. When the easement was granted to John Lewin, a dirt roadway existed that defined the easement. In John Lewin's deposition, he acknowledged that the roadway which provided him ingress and egress is the same roadway now known as River Hill Drive.

properly determined that there was a latent ambiguity.

██ We are of the opinion, however, that the trial court erred by failing to continue its inquiry. The trial court concluded that the access easement was a "bad call" because of the deficiency in its description. However, even when the location of an existing easement is insufficiently described in a written instrument, "if the location can be ascertained from evidence extrinsic to the written instrument such as by observation of the obvious location and extent of the easement, the insufficient written description will not prevent enforcement of the easement." *American Nat. Bank & Trust Co. v. Grimes*, 460 S.W.2d 11, 14 (Ky. 1970).

The Vorherrs argue that the trial court ignored the decision in *Marcum v. Cantrell*, 409 S.W.2d 159, 161 (Ky. App. 1966), wherein Kentucky's then-highest Court held that where "there is an inconsistency between the monuments and the courses and distances described, the general rule is that resort is to be had to the monuments whether natural or artificial, and then to courses and distances...." (*Quoting* 2 Am.Jur.2d, *Boundaries*, § 10, p.554). Further, 25 Am. Jur. 2d *Easements and Licenses* § 55 explains:

Although the precise location of an easement sought to be established should be described either by metes and bounds or in some other definite way, an easement by grant does not require a definite statement as to width, dimensions, or exact location. What is required is a sufficient description which serves as a guide to identify the land upon which the easement is located. In other words, the description of the easement requires a certainty such that a surveyor can go on the land and locate the easement from such description. Thus, although certainly desirable in most instances,

language fixing the location of an easement is not always necessary when other terms of the easement safeguard the servient estate from the risk that its burden may be greater than that for which it bargained.... Monumented course descriptions will control location where distance determinations are stated incorrectly in a grant.

We have no hesitancy in saying that since the roadway actually existed when the deeds were executed, it constituted a prevailing monument, and was of controlling importance. As was said in *Schultz v. Maxey*, 307 Ky. 325, 210 S.W.2d 950, 951 (1948), "If such roadway actually existed, it is well settled that the courses and distances in appellants' deed must yield to it as a known and clearly defined physical object."

██ Since a latent ambiguity existed within the description of the access easement when read in conjunction with the property description contained in the Vorherrs' deed, the trial court should have considered the parol evidence, especially the expert opinions submitted by the Vorherrs, as an aid to the proper construction of the language used. *Caudill v. Citizens Bank*, 383 S.W.2d 350, 352 (Ky. 1964). Clearly, the latent ambiguity created a question of material issue of fact. Once an ambiguity is found, "areas of dispute concerning the extrinsic evidence are factual issues ... subject to resolution by the factfinder." *Cantrell*, 94 S.W.3d 385. Accordingly, we must conclude that the trial court's 2013 summary judgment order was improper.

The Vorherrs next argue that the trial court's 2015 ruling that its denial of their motion for summary judgment operated as a grant of summary judgment in favor of Coldiron was erroneous and violated their due process rights. In the alternative, the Vorherrs contend that even if the order is

found to have granted summary judgment in favor of Coldiron, such was error because the evidence established the existence of a quasi-easement. Citing to *Kreamer v. Harmon*, 336 S.W.2d 561 (Ky. 1960), the Vorherrs point out that their utilities were connected to the public lines under Coldiron's land when the Lewins owned all of the property, and their continued use of and access to those utilities is reasonably necessary to the enjoyment of their property.

As previously noted, the 2014 order denying the Vorherrs' motion for summary judgment did not operate as a grant of summary judgment in favor of Coldiron. The trial court did nothing more than rule that evidence supporting the Vorherrs' claim was not "currently" in the record. Moreover, we are of the opinion that the trial court's reliance on *Carr v. Barnett*, 580 S.W.2d 237 (Ky. App. 1979), was misplaced. This case does not involve the mere connecting with utility lines on another's property, but rather the continued access to such property for maintenance and repairs.

For the reasons set forth herein, the orders of the Kenton Circuit Court are reversed and this case is remanded for further proceedings in accordance with this opinion on the Vorherrs' claim regarding the validity of the access easement, as well as their utilities access claim, if necessary.

ALL CONCUR.