RENDERED: MAY 26, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0428-MR

WESTERN ENERGY PRODUCTION,
LP; BLACK ROCK FARMS, LLLP;
BLACK ROCK THOROUGHBREDS,
LLLP; SM CAPITAL VENTURES,
LLC; STEVEN MARSHALL; AND
WESTERN ENERGY PRODUCTION,
LLC                                                          APPELLANTS


APPEAL FROM WOODFORD CIRCUIT COURT
v.         HONORABLE JEREMY MICHAEL MATTOX, JUDGE
ACTION NO. 17-CI-00201


DEREK ORCHARD, SUCCESSOR
TRUSTEE OF THE ORCHARD
FAMILY TRUST DATED
NOVEMBER 19, 1979, TRUST A OF
THE ORCHARD FAMILY TRUST,
TRUST B OF THE ORCHARD
FAMILY TRUST AND TRUST C OF
THE ORCHARD FAMILY TRUST                                     APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND GOODWINE, JUDGES.

CALDWELL, JUDGE:  This complex appeal asks two main questions.  First, did the trial court correctly hold that Derek Orchard,[1] ("Orchard") a judgment creditor of Western Energy Production, LP ("Western"), had standing to challenge Western's attempt to transfer its ownership of two Kentucky partnerships to a Colorado entity?  Second, if Orchard has standing, did the trial court correctly grant summary judgment to Orchard because the documents purporting to transfer the Kentucky partnerships were not acknowledged, as required by their partnership agreements?  We agree with the trial court that Orchard has standing and was entitled to summary judgment.  Accordingly, we affirm.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The underlying facts and procedural history are tangled.  Also, there are many business entities involved, some of which are similarly named.  We have examined the parties' briefs and the trial court's record but, in the interests of clarity and judicial economy, we shall attempt to streamline the facts and procedural history.  For example, we will refer collectively to the similarly named

---

[1] Derek Orchard, sometimes curiously referred to as David Orchard, is a party in his role as successor trustee of the Orchard Family Trust dated November 19, 1979, Trust A of the Orchard Family Trust, Trust B of the Orchard Family Trust and Trust C of the Orchard Family Trust.  For simplicity's sake, we will refer to him as Orchard.

business entities related to, and including, Western as simply "Western." We also will discuss only the arguments necessary to resolve the limited issues presented to us. Any arguments not discussed herein are irrelevant, redundant, or otherwise without merit.

Orchard sued Western in a California state court over a debt. While that litigation was ongoing, Western executed documents transferring its ownership of two Kentucky entities, Black Rock Farms, LLLP and Black Rock Thoroughbreds, LLLP (collectively "Black Rock") to Steven Marshall; Marshall then immediately transferred ownership of Black Rock to SM Capital Ventures, LLC ("SM"). Western, Black Rock, and SM were all owned, or controlled, by Marshall, and he alone signed the transfer documents on behalf of himself and all of the involved entities. None of the transfer documents were notarized.

Orchard obtained a judgment for more than $600,000 against Western in California; Western then sought a charging order in the Fayette Circuit Court.[2] The Fayette Circuit Court issued a charging order in favor of Orchard

---

[2] A *charging order* is a "[a] statutory procedure whereby an individual partner's creditor can satisfy its claim from the partner's interest in the partnership." BLACK'S LAW DICTIONARY (11th ed. 2019). *See also* 68 C.J.S. *Partnership* § 263 (2023) ("A charging order is a postjudgment remedy that allows the judgment creditor of an individual debtor-member of a limited liability company or a partnership to enforce a judgment by charging the individual member's distributional interest with the unsatisfied amount of a judgment. A charging order is not a money judgment but the statutory means by which a judgment creditor may reach the partnership interest of a judgment debtor.") (footnotes omitted). Although each jurisdiction has its own laws, in general a charging order "exists to protect other members" of the business entity "from having involuntarily to share governance responsibilities with someone they did not choose, or

-3-

against Western's interest in Black Rock. But, by the time the charging order was issued, Western had already tried to transfer its interests in Black Rock to SM.

Orchard filed this action in the Woodford Circuit Court against Western, Black Rock, Marshall, and SM (collectively "defendants" or "Appellants"). It is unclear from the parties' briefs why Orchard obtained a charging order in Fayette Circuit Court but filed this action in Woodford Circuit Court,[3] but the reason Orchard filed this action is plain: if Western had already

---

from having to accept a creditor of another member as a co-manager. A charging order protects the autonomy of the original members, and their ability to manage their own enterprise." *In re Albright*, 291 B.R. 538, 541 (Bankr. D. Colo. 2003). *See also* 68 C.J.S. *Partnership* § 263 (2023) ("The purpose of the charging order is to protect the partnership business and prevent the disruption that would result if creditors of a partner executed directly on partnership assets.").

In Kentucky, the issuance of a charging order is governed by Kentucky Revised Statutes (KRS) 362.2-703, which provides in relevant part:

(1) This section provides the exclusive remedy by which the judgment creditor of a partner or the transferee of a partner may satisfy a judgment out of the judgment debtor's transferable interest.

(2) On application to a court of competent jurisdiction by any judgment creditor of a partner or a partner's transferee, the court may charge the transferable interest of the judgment debtor with payment of the unsatisfied amount of the judgment. To the extent so charged, the judgment creditor has only the rights of a transferee, and shall have no right to participate in the management or to cause the dissolution of the partnership.

[3] Even if we assume for purposes of argument that each circuit court had jurisdiction over the case filed within it, it is unclear why one or the other case was not transferred so both would be before the same court, perhaps pursuant to the doctrine of *forum non conveniens*. *See, e.g.*, *Stipp v. St. Charles*, 291 S.W.3d 720, 725 (Ky. App. 2009) (internal quotation marks and citations omitted) ("The doctrine of *forum non conveniens* is an exception to the general rule that a court is duty bound to hear cases within its vested jurisdiction. It permits a court properly vested with jurisdiction and venue nevertheless to decline the exercise of its jurisdiction where an alternative forum exists and where the private interests of the parties or the public interests of the tribunal would be better served by proceeding in the alternative forum."). However, we decline to

-4-

divested itself of Black Rock, then the charging order was, from a practical

perspective, useless.

Orchard's complaint raised two related claims, each with the common

end goal of undoing the Black Rock transfers. Count I asked for a declaratory

judgment that the transfers were void because they were not acknowledged, as

required by Black Rock's partnership agreements. Count II asked for a ruling that

the transfers were void because they had been made with the intent to delay, hinder

or defraud Orchard as a creditor of Western, as prohibited by KRS 378.010.[4]

Western filed a motion to dismiss. First, they argued Count I had to

be dismissed because it "asserts the same substantive rights as Count II . . . ."

Second, they asserted Count II had to be dismissed because the Black Rock

transfers had been effectuated in the ordinary course of business pursuant to

Marshall's counsel's tax-related advice. Orchard eventually sought summary

judgment on Count I, arguing it was plain that the transfers were invalid.

The trial court eventually granted Western's motion for summary

judgment, and denied Orchard's motion for summary judgment, because it

---

explore Orchard's curious usage of dual fora further because Appellants do not explicitly raise that two-track approach as a basis for relief (other than, to a degree, their unavailing collateral estoppel argument – which we shall address later).

[4] Before its repeal, KRS 378.010 provided in relevant part that "[e]very gift, conveyance, assignment or transfer of . . . any estate, real or personal . . . made with the intent to delay, hinder or defraud creditors . . . shall be void as against such creditors . . . ." Though it was repealed several years ago, KRS 378.010 was operative when the Black Rock transfers occurred.

concluded Orchard lacked standing to bring the action since KRS 378.010 had been repealed before he filed his complaint. Despite having concluded Orchard lacked standing, the vast majority of the court's opinion was favorable to him. For example, the court indicated that the lack of notarization on the Black Rock transfer documents violated the partnership agreements.

Orchard appealed. We reversed.

We held that "the trial court erred in finding Orchard lacked statutory standing under KRS 378.010" because the transfers occurred before its repeal. *Orchard v. Western Energy Production, LP*, No. 2019-CA-000066-MR, 2019 WL 5293489, at *2 (Ky. App. Oct. 18, 2019). We directed the trial court to "apply KRS 378.010" on remand. *Id.* But we declined to address Orchard's argument that he was entitled to summary judgment on Count I because the trial court had not directly ruled on that issue. *Id.* at *3.

After our Supreme Court denied discretionary review, the case returned to the trial court, where Orchard quickly again moved for summary judgment on Count I. The primary basis for Orchard's motion was the fact that the trial court had already held that the transfers did not comply with Black Rock's partnership agreements. Western objected on numerous grounds, including an argument that Orchard was improperly trying to participate in the management of Western and/or Black Rock.

While Orchard's motion was pending, Western filed their own motion for summary judgment on Count I. Attached to that motion were what were styled "Unanimous Written Consent" documents signed by Marshall on behalf of Black Rock, Western and SM. Those consents purported to amend Black Rock's partnership agreements to, essentially, approve retroactively the prior, un-notarized Black Rock transfers.

While the dueling motions for summary judgment were pending, Orchard asked the Fayette Circuit Court to hold Western in contempt for violating the charging order by executing the consent documents. The Fayette Circuit Court denied Orchard's motion.[5]

After the motions for summary judgment had been pending for roughly a year, the Woodford Circuit Court issued an unusual order granting Orchard's motion for summary judgment on Count I of the complaint. The order contains a lengthy discussion of the case's history but only minimal analysis. Specifically, the only analysis is: "Clearly under KRS 378.010, Plaintiff has standing, and as previously discussed, this Court found that the transfers did not comply with the partnership agreements. Therefore, the purported transfers in this

[5] The Fayette Circuit Court's entire record is not before us, but defendants attached the motion for contempt and the order denying that relief to their reply to Orchard's response to their motion for summary judgment. No party has disputed the accuracy of those documents.

case were ineffective because they were not acknowledged." The court did not

address defendants' motion for summary judgment nor many of the arguments

raised by the parties. Western then filed this appeal.[6]

## ANALYSIS

### A. Standards of Review

As the movant, Orchard bore the "burden of showing no genuine

dispute of material fact." *Bramlett v. Ryan*, 635 S.W.3d 831, 835 (Ky. 2021). That

burden was heavy because the issue is not whether Orchard presented facts which

---

[6] The order states that it is final and appealable but does not state there is no just cause for delay. Generally, an order which resolves an entire case is inherently final and appealable under Kentucky Rule of Civil Procedure ("CR") 54.01 but an order which resolves only a discrete portion of a case may be made final and appealable only if it explicitly provides that it is final and appealable **and** there is no just cause for delay. *See* CR 54.02(1); *Vorherr v. Coldiron*, 525 S.W.3d 532, 540 (Ky. App. 2017). In short, this order is only final and appealable if it resolves the entire action because it lacks the otherwise requisite "no just cause for delay" recitation.

The order does not explicitly address Appellants' motion for summary judgment, nor does it explicitly resolve Count II of the complaint. It would have been far better practice for the trial court to have addressed those matters.

Nonetheless, under these unique facts, we conclude the order is inherently final and appealable. The bottom line of the decision is the court's conclusion that the Black Rock transfers were invalid. Count II sought the same core relief, albeit via a different legal theory and mechanism, so granting summary judgment on Count I rendered Count II functionally moot. After all, having declared the transfers invalid under Count I, it would have served no practical purpose to have determined if the transfers also violated KRS 378.010, the relief sought in Count II. Moreover, granting summary judgment to Orchard inevitably denied Appellants' motion for summary judgment implicitly because it is impossible for both Orchard and Appellants to be entitled to summary judgment under these facts.

In sum, what else of material substance remained for the trial court to do after it granted summary judgment to Orchard on Count I? Nothing. Thus, the order is final and appealable.

-8-

would "draw an inference or conclusion" in his favor; instead, the issue is whether "*no material facts are disputed* such that there is only one legally sufficient conclusion to be drawn from the facts – that being the conclusion urged by [Orchard]." *Id.* at 836.

Our Supreme Court has stressed that "[s]ummary judgment is an extraordinary remedy a court must cautiously apply" which "may only be used to conclude litigation in which, as a matter of law, it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in his or her favor." *Id.* In assessing whether there are disputes of material fact, we must consider the evidence in the light most favorable to Western. *Id.* Because no findings of fact are at issue, our review is *de novo*. *Id.*

Our analysis does not always precisely track that utilized by the trial court, but "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

### B. Orchard's Standing

Western first argues Orchard lacks standing because he is neither a party to Black Rock's partnership agreements nor an intended beneficiary of them. Under longstanding Kentucky law, a stranger to a contract typically "has no right to question its validity," *Aetna Life Ins. Co. v. Weck*, 163 Ky. 37, 173 S.W. 317,

317 (1915), unless it "was made for [the stranger's] benefit." *Sexton v. Taylor Cnty.*, 692 S.W.2d 808, 810 (Ky. App. 1985). And, generally, the rules which govern contracts also govern partnership agreements. 68 C.J.S. *Partnership* § 113 (2023). Orchard admits he is not a party to the agreements or a third-party beneficiary of them but asserts he has standing under, among other bases, KRS 378.010. We agree.

The parties have not cited, nor have we independently located, any precedent specifically allowing a creditor to file a declaratory judgment action under KRS 378.010 seeking to declare null a debtor's attempted transfer of assets. But we conclude such an action is permissible (though we recognize that our decision will have limited future impact since KRS 378.010 has been repealed).

A creditor seeking relief under KRS 378.010 would logically not have been a party to the allegedly fraudulent transaction it wished to challenge. In other words, a creditor seeking relief under KRS 378.010 would have been a stranger to the challenged transaction. Thus, a rigid, formulaic application of the typical standing rules barring third parties from challenging contracts would, under these unique facts, render illusory the statutory protection offered to creditors against allegedly fraudulent transfers of a debtor's assets.

Moreover, a declaratory judgment action is well-suited for these facts. Orchard sought only a ruling from the court that the transfers were an improper

-10-

attempt to circumvent the California judgment and Kentucky charging order. Western, of course, vigorously denies having committed any improprieties. Therefore, there is an actual case or controversy between the parties about whether Western took acts to impair Orchard's rights as a judgment creditor. *See, e.g.*, *Commonwealth v. Kentucky Retirement Systems*, 396 S.W.3d 833, 839 (Ky. 2013) (internal quotation marks and citations omitted) (noting that the declaratory judgment act "requires the existence of an actual controversy" which "occurs when a defendant's position would impair, thwart, obstruct or defeat plaintiff in his rights. A declaratory judgment action may be brought standing alone, or may be brought with the substantive claim seeking recompense."). A judgment creditor may, generally, seek a declaratory judgment that a creditor has intentionally taken actions to destabilize or undermine a court order.

Western argues that Orchard could not seek declaratory relief in Count I while bringing a separate fraud claim under KRS 378.010 in Count II because a declaratory judgment action cannot be "a substitute or alternative for such actions as are particularly provided for, to be brought in a particular way." *Sullenger v. Sullenger's Adm'x*, 287 Ky. 232, 152 S.W.2d 571, 574 (1941). However, though not addressed by the parties, precedent also provides that relief under the Declaratory Judgment Act is unavailable "only where a special statute is clearly intended to provide an exclusive remedy . . . ." *Iroquois Post No. 229, Am.*

*Legion v. City of Louisville*, 279 S.W.2d 13, 14 (Ky. 1955). Indeed, CR 57 is squarely opposed to Western's argument since it provides in relevant part that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

We conclude that Western's argument fails. KRS 378.010 was not a "special statute" which provided an "exclusive remedy." It did not specify that an action for an alleged violation of its provisions had to have been brought "in a particular way." Moreover, in the prior appeal we held that "the trial court erred in finding Orchard lacked statutory standing under KRS 378.010" and "direct[ed] the trial court to apply KRS 378.010 on remand." *Orchard*, 2019 WL 5293489, at *2.

In sum, under these facts, we affirm the trial court's conclusion that Orchard had standing to bring a declaratory judgment action.

### C. No Exclusive Remedy Violation

Of course, having standing only permits Orchard to *seek* relief; we must now determine whether the trial court correctly concluded that he was entitled to *receive* relief. Western raises several interrelated arguments that Orchard was not entitled to relief, the first being that a declaratory judgment action is improper because KRS 362.2-703 provides Orchard's exclusive remedy. KRS 362.2-703 has apparently never been cited by this Court or our Supreme Court, so there is no precedent to assist us.

-12-

KRS 362.2-703(1) states in relevant part that it "provides the exclusive remedy by which the judgment creditor of a partner or the transferee of a partner may satisfy a judgment out of the judgment debtor's transferable interest." However, Orchard is not attempting to *satisfy* a judgment in his declaratory judgment action. Indeed, he is not seeking monetary relief. Instead, Orchard is attempting to ensure that an extant judgment is not impaired.

In its brief, Western raises a related argument that permitting the declaratory judgment action would impermissibly allow Orchard to "meddle and challenge every aspect" of Black Rock in order to "effectively destroy the business from within." We disagree for two main reasons. First, Orchard has no motivation to destroy Black Rock. In fact, his motivation is logically the exact opposite as he needs Black Rock to continue to be vibrant to help him recover under the charging order.

Second, we disagree with Western's speculative belief that allowing the declaratory judgment count permits Orchard to be involved in Black Rock's (or Western's) day-to-day business affairs. If we affirm the trial court's grant of summary judgment to Orchard, the transfer of ownership from Western to SM will be unwound and the charging order would remain effective. But that is all that would occur.

The declaratory judgment in favor of Orchard would not permit him to require Black Rock (or Western) to take any business-related actions or permit him to forbid Black Rock from taking any business-related actions. For example, a declaratory judgment would not allow Orchard to require Black Rock to buy or sell any particular horse or hire or fire any particular employee. After receiving a declaratory judgment, Orchard would be in the same position he was prior to filing this complaint: a judgment creditor who has no role in the management or business operations of Black Rock (or Western).

Finally, we are not persuaded by Western's lament that affirming the trial court's decision would require them to amend their post-transfer tax returns. The only issue before the court is whether Orchard presented a meritorious claim for declaratory relief. The fact that the declaratory judgment may result in ancillary inconvenience or expense to Western is irrelevant – especially as Western alone is responsible for executing the unacknowledged documents.

### D. The Validity of the Transfers

We now turn to Western's sundry arguments that the transfer documents were sufficient. We disagree.

### 1. Acknowledgement Requirements

In relevant part, the partnership agreements provide that a partner "may assign the whole or any part of his interest in the Partnership . . . by

executing *and acknowledging* a written instrument of assignment . . . ."[7] The

agreements do not contain a definition of *acknowledgment*, but the trial court

explained in the decision which gave rise to the first appeal that term essentially

requires any documents transferring partnership interests to be notarized. On

remand, the trial court held that the transfers at issue "were ineffective because

they were not acknowledged." Although their brief is somewhat hazy at times, it

appears as if Western argues that the agreements did not require notarization.

"An acknowledgment consists of an oral declaration by the signer of

the document and a written certificate prepared by a public official, generally a

notary public." 1A C.J.S. *Acknowledgments* § 1 (2023). *Accord* BLACK'S LAW

DICTIONARY (11th ed. 2019) (defining *acknowledgment* as it pertains to this case as

"[a] formal declaration made in the presence of an authorized officer, such as a

notary public, by someone who signs a document and confirms that the signature is

authentic"); KRS 423.130(1) (requiring a person "taking an acknowledgment" to

"certify that . . . [t]he person acknowledging appeared before him and

acknowledged he executed the instrument"). Therefore, the trial court properly

held that the transfer documents failed to comply with the unambiguous terms of

the partnership agreements because the transfer documents were not

_____

[7] The quoted language applies to limited partners but a general partner "may assign Units in the same manner as a Limited Partner."

-15-

acknowledged.  All the trial court did was to enforce the plain language of the partnership agreements.  *See, e.g.*, 68 C.J.S. *Partnership* § 113 (2023) ("The courts cannot make a different contract from that which the parties intended or override the agreement which the parties, in fact, made.  If the provisions of a partnership agreement are clear, complete, and unambiguous, the agreement should be enforced according to its terms . . . .") (footnotes omitted).

## 2.  Silent Amendment of the Partnership Agreements

Having established that the Black Rock partnership agreements required any documents transferring ownership to be acknowledged, we now address Western's argument that the acknowledgement requirements were (silently) eliminated when Marshall – who owned or controlled all relevant entities – signed unacknowledged transfer documents. Western's argument is based on a clause in the partnership agreements allowing them to "be amended in any respect upon the affirmative vote of the Partners holding a majority of the then outstanding Units."  Under Western's argument, Marshall "voted" to amend the agreements by simply signing the transfer documents.

Western's argument fails because it cherry picks the language of the partnership agreements.  The relevant sections of the agreements provide in full:

> Second [sic] 21.1[.]  Except as otherwise required by law, this Agreement may be amended in any respect upon the affirmative vote of the Partners holding a majority of the then outstanding Units.  If Partners

-16-

holding more than 10 percent of the then outstanding Units request in writing that the General Partner submit to a vote of the Partners a proposed amendment to this Agreement, the General Partner shall do so. Any vote of the Partners may be accomplished at a meeting of Partners called for such purpose by the General Partner upon not less than ten days' prior notice or, in lieu of a meeting, by the written consent of the required percentage of Partners.

As Orchard's brief cogently argues, Western "have not produced resolutions, meeting minutes, a sworn affidavit, or any other evidence to establish" that there was either a meeting called to amend the agreements or a written consent to amend them without a meeting. The agreements do not permit themselves to be silently amended whenever Marshall takes any action which does not conform with them. To the contrary, the agreements set forth a formal amendment process and Western has not pointed to proof where they attempted to follow that process.

In fact, the transfer documents each state that the transferee "accepts and adopts all the provisions" of the partnership agreements. It would be contrary to the transfer documents' plain language to conclude that they somehow were intended to amend the partnership agreements. Moreover, the agreements require an affirmative vote to be amended, and merely signing a document which makes no mention of amending the agreements is not an affirmative amendment vote.

### 3. Collateral Estoppel

Western tersely argues that Orchard is collaterally estopped to contend that the transfers were ineffective because the Fayette Circuit Court denied Orchard's motion for contempt. Orchard does not meaningfully respond to the argument in his brief, nor did the trial court address this argument.

As we have explained, "[c]ollateral estoppel is a doctrine that evolved to promote judicial economy and finality" whose "essential elements . . . are: (1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; and (4) a prior losing litigant." *Swinford Trucking Co., Inc. v. Paducah Bank and Tr. Co.*, 314 S.W.3d 310, 311 (Ky. App. 2010). Though there is obviously overlap between the Fayette Circuit Court action and the Woodford Circuit Court actions, we reject Western's collateral estoppel claims because the precise issue in the Fayette contempt proceedings is not present in the Woodford declaratory judgment action.

The question in the Fayette contempt proceedings was whether Western took acts which were contemptuous of the court's charging order. The Woodford action at hand does not involve whether Western violated the charging order itself. Instead, the question here is whether the Black Rock transfers were valid. The two cases are obviously related but the core issues in the contempt

-18-

motion and this action are not identical, so we must reject Western's collateral estoppel arguments.

### 4. Retroactive Amendment of the Partnership Agreements

Western alternatively argues that they retroactively amended the partnership agreements to approve the transfers at issue via issuing written consents signed by Marshall on behalf of SM, Black Rock and Western. Those consents, executed while this case was on remand to the Woodford Circuit Court, provide in relevant part that:

> it is in the best interest of the Partnership [Black Rock] to formally amend its Agreement in writing to remove any alleged or existing requirement that an assignment of Limited Partnership interest be acknowledge [sic] by notarized signature . . . .
>
> Any transfer of any Partnership interest (including a Limited Partnership interest) delivered to the General Partner, whether before or after the date of this Unanimous Written Consent, is effective and recognized for all purposes as of the date of [sic] set forth on the applicable transfer document.

Western argues that Orchard agreed that the lack of acknowledgements could be "cured" during various Woodford Circuit Court proceedings. However, as Orchard notes in his brief, Western failed to list the video footage of those proceedings in its designation of record. Consequently, the circuit court clerk did not include videos of those hearings in the certified record before us. *See* Kentucky Rules of Appellate Procedure ("RAP") 24(A)(3) and

-19-

(B)(1)(A) (effective January 1, 2023);[8] CR 98(3) (effective before January 1, 2023);[9] *Gambrel v. Gambrel*, 501 S.W.3d 900, 902 (Ky. App. 2016) ("The appellant . . . bore responsibility for ensuring the appellate court received a complete record. He failed to carry his burden by not designating the November 9 hearing to be certified as part of the appellate record . . . . Without the recorded hearing, we cannot review Denver's claims and must assume the content of the hearing supported the trial court's entry of the DVO."). Because the hearings relied on by Western are not in the record before us, we cannot determine whether Orchard definitively agreed that the deficiencies in the transfer documents could be

---

[8] RAP 24 provides in relevant part:

> (A)(3) . . . Official recordings of the trial that results in the order or judgment being appealed from shall be certified as a part of the record on appeal. In addition, official recordings of other proceedings that have been designated by the parties . . . shall be certified as a part of the record on appeal . . . .

> (B)(1)(a) . . . Appellant or counsel for appellant, if any, shall provide the clerk of the trial court with a designation listing with specificity the dates on which official recordings were made for all pre-trial and post-trial proceedings necessary for inclusion in the record on appeal.

[9] The former CR 98(3), which was in effect when Appellants filed this appeal and submitted their designation of record, similarly contained the following relevant language:

> To facilitate the timely preparation and certification of the record . . . appellant or counsel for appellant, if any, shall provide the clerk with a list setting out the dates on which video recordings were made for all pre-trial and post-trial proceedings necessary for inclusion in the record on appeal.

"cured." And, of course, agreeing that the transfer documents *could* be cured is not the same as agreeing that they *were* cured by these consent documents.

Our review of the curative efficacy and validity of the consent agreements is hampered by the fact that the trial court did not address this issue. Moreover, Western cites no binding authority holding that it is permissible to retroactively amend a partnership agreement to validate an act which violated the agreement's terms when performed. On the other hand, Orchard cites no binding authority prohibiting a retroactive amendment of a partnership agreement.

Our independent research did not reveal opinions addressing this precise issue. However, there are at least some instances where a partnership is permitted to act retroactively. For example, under KRS 362.1-802(2), a partnership may sometimes retroactively unwind its dissolution.[10] But even if we thus assume – solely for the purposes of argument – that a partnership may

---

[10] KRS 362.1-802(2) provides:

> (3) At any time after the dissolution of a partnership and before the winding up of its business is completed, all of the partners, including any dissociating partner other than a wrongfully dissociating partner, may waive the right to have the partnership's business wound up and the partnership terminated. In that event:
>
> > (a) The partnership resumes carrying on its business as if dissolution had never occurred, and any liability incurred by the partnership or a partner after the dissolution and before the waiver is determined as if dissolution had never occurred . . . .

-21-

sometimes retroactively amend its partnership agreement in certain circumstances, Appellants have not shown this is one of those unusual circumstances.

Prior to its repeal, KRS 378.010 made plain that Kentucky public policy is to prevent a debtor from transferring assets to prevent a creditor's ability to recover a lawful debt. And for over a century, Kentucky precedent has held that a transfer of assets by someone against whom litigation is pending is a "badge of fraud, especially where the conveyance leaves the grantor without any estate." *McDonough v. McGowan*, 165 Ky. 425, 177 S.W. 277, 279 (1915).

Here, Marshall arranged for Western's interests in Black Rock to be transferred to SM while Orchard's claims against Western were pending in a California court. As it pertains to this case, it appears that Western would have no Kentucky assets remaining subject to the charging order if the Black Rock transfers were effective. Thus, the transfers contain at least one badge of fraud. We conclude that it would be improper to allow a judgment debtor to take a retroactive act which contains a badge of fraud and would impair the rights of a judgment creditor, or the holder of a charging order. We agree with Orchard that "if permitted to operate as Appellants intend, [the consents] will effectively allow Western to remove its interests in the Black Rock Entities from Orchard's charging order's purview despite the transfers being ineffective prior to the charging order's

-22-

effective date" which "would undermine both Orchard's rights under the charging order and the charging order remedy at large . . . ."

Moreover, deeming the consents to be curative would allow Western to *intentionally*, *retroactively* thwart a charging order. A charging order is "the exclusive remedy by which the judgment creditor of a partner or the transferee of a partner may satisfy a judgment out of the judgment debtor's transferable interest." KRS 362.2-703(1). Allowing Western to eliminate, retroactively, its interests in Black Rock would mean that the efficacy of the charging order would be nil. Thus, Orchard's "exclusive remedy" would be useless, leaving it with no effective remedy at all.

Or, as Orchard asserts, if the consents "are given effect, it will gut Orchard's charging order, leaving him with no other remedy to collect [the] judgment debt through Western's interests in the Black Rock Entities." We cannot countenance a judgment debtor retroactively eviscerating the rights of a judgment creditor. We cannot countenance the intentional, retroactive undermining of a valid court order.[11]

---

[11] Appellants argue that Orchard did not raise the inherent conflict between the consents and the charging order to the trial court and thus that conflict is beyond our purview. But Appellants themselves specifically argued to the Woodford Circuit Court in their motion for summary judgment that Marshall's approval of the consents means "there is no longer an existing 'actual controversy' with respect to Count I of the Plaintiff's Complaint . . . ." Record ("R.") at 411. And Orchard responded by arguing in relevant part that the consents "will effectively allow Western to remove its interest in the Black Rock Entities from the Charging Order's purview despite the transfers being unsuccessful prior to the Charging Order's effective date[,]" which

Finally, the consents are flawed because they curiously were not signed by Marshall in his individual capacity. Western did not transfer its interests in Black Rock directly to SM. Instead, Western transferred its Black Rock interests to Marshall who immediately transferred his interests to SM. Thus, Marshall in his individual capacity would logically also need to have re-approved the transfers in his individual capacity as both a grantee and grantor.

**E. Summary**

Lest this opinion be misconstrued, we are not opining definitively that Western acted in bad faith with the attempt to transfer Western's interests in Black Rock to SM. There are badges of fraud, but Western has presented counterarguments that the transfers were undertaken upon the tax-related advice of counsel. Though the parties discuss it, whether Western acted in bad faith is not really at issue in this appeal. Perhaps the issue of Western's intent presents a disputed issue of fact. But that dispute is not material to the limited questions

"would undermine both Orchard's rights under the Charging Order and the charging order remedy at large . . . ." R. at 417. In short, though the parties' phraseology in circuit court may be different than that used here, the impact of the consents *vis-à-vis* the charging order was discussed in that court. In any event, we are affirming the trial court's decision based on the plain face of the record and our Supreme Court has forcefully commanded that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C.*, 434 S.W.3d at 496. *See also, e.g.*, *Lynn v. Commonwealth*, 257 S.W.3d 596, 599 (Ky. App. 2008) ("[A]n appellate court may affirm the decision of a trial court for any reason sustainable under the record.").

presented because this appeal does not involve the validity of the charging order or whether Western may divest itself of Black Rock, under certain circumstances.

Instead, reduced to its core essence, the issue in this appeal is whether the transfer documents executed by Western are valid – regardless of Western's subjective motivation for seeking to divest itself of Black Rock. Even viewing the facts in the light most favorable to Western, the transfer documents are fatally flawed. Thus, Orchard was entitled to summary judgment.

In other words, this entire litigation only returns the parties to the *status quo ante litem* – Orchard possesses a California judgment against Western, Western has not validly transferred its interests in Black Rock, and Orchard possesses a Kentucky charging order against Western's interests in Black Rock.

## CONCLUSION

For the foregoing reasons, the Woodford Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Thomas D. Bullock
Rachele T. Yohe
Lexington, Kentucky

BRIEF FOR APPELLEE:

Gregory P. Parsons
Marshall R. Hixson
Megan K. George
Lexington, Kentucky